## GALLAGHER v. GALLAGHER.

(Supreme Court, Appellate Division, First Department.   December 17, 1909.)

1. ESTOPPEL (§ 97*)—ACQUIESCENCE IN STATEMENT.
     Where a husband agreed orally with his wife to transfer real property to her to enable her to qualify as surety on his bonds for contract work, and that she should reconvey the land after the bonds were satisfied, and did so convey to her, the fact that the husband sat by while the wife was testifying upon her justification as a surety on his bonds, and without objection heard her say that she was the actual owner of the equities in the property, and subsequently remarked that every word she said was the truth, did not estop him, as between him and his wife, from thereafter denying the truth of her statements upon her refusal to reconvey, there being no third persons affected, and from showing the true character of their agreement.
     [Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 289; Dec. Dig. § 97.*]

2. SPECIFIC PERFORMANCE (§ 39*)—CONTRACTS ENFORCEABLE—ORAL AGREEMENT TO CONVEY.
     In view of the confidential relation of husband and wife which was relied upon by the husband in making and performing his part of the agreement, equity will compel the wife to specifically perform her part of the agreement to reconvey to prevent the abuse of confidence and the perpetration of fraud, and the statute of frauds would not avail as a defense..
     [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 117; Dec. Dig. § 39.*]

     Ingraham and Scott, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Patrick Gallagher against Mary Gallagher. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before INGRAHAM, CLARKE, HOUGHTON, McLAUGHLIN, and SCOTT, JJ.

John J. Gleason, for appellant.
Straley & Hasbrouck (John H. Judge, of counsel), for respondent.

CLARKE, J.  This is an appeal from a judgment entered on a decision of the Special Term in favor of plaintiff in an action brought against his wife to compel the specific performance of an alleged oral contract to reconvey real estate.

Patrick Gallagher was a contractor. He married defendant in 1888, and he and his wife are still living together. The court has found: That plaintiff and defendant entered into an oral agreement, whereby plaintiff agreed to convey to defendant certain real property and place the title in her name for the purpose of enabling defendant to qualify as surety on plaintiff's bonds for contract work, and bonds to secure liens and judgments whenever the same might arise in the conduct of plaintiff's business, and after the bonds were satisfied defendant to convey all of the premises so conveyed to her back to the plaintiff, or to any one he might name on demand. That in accordance with said agreement, and for the purpose set forth, plaintiff did convey the premises in suit to the plaintiff, and she did become surety

on his bond. That said bond has been fully satisfied, and the claim bonded released in writing. That the deeds to said property were not delivered to defendant, but remained in plaintiff's possession. That during the time title was in defendant's name the rents were collected by plaintiff, or by some one in his behalf, up to the present time, and that he paid the taxes, water rates, assessments, and charges imposed thereon, and insured the same against loss by fire payable to himself. That during the time mentioned plaintiff owned other property to the value of $220,000 mortgaged for $120,000, had no judgment against him which was not bonded, and was worth about $100,000 over and above his just debts and liabilities, and was solvent. That plaintiff performed all of the terms and conditions of the agreement on his part. That he relied upon the confidence and trust he had in the defendant in making the agreement and performing the terms and conditions thereof. That, after the satisfaction and discharge of the aforesaid bond, plaintiff demanded a reconveyance pursuant to the agreement, but defendant refused.

The defendant admits all the physical facts in regard to the various deeds, contracts, and bonds. She denies the agreement to reconvey, and claims that the plaintiff conveyed the property to her as a provision for herself and her two children, who were then living, a boy having since died, in case anything happened to him. The testimony upon which she relies to reverse this judgment as against the evidence and the weight thereof is that, in her examination upon justification on the bond, she testified, in regard to 229 East Twenty-Sixth street, that she acquired said property on February 13, 1897, from John McKew, who got it the same day from Mr. Gallagher; that she did not pay anything for it; that her husband gave it to her; that McKew was her brother-in-law. "The property was really conveyed through my brother-in-law from Mr. Gallagher. Q. Do you own the house? A. Yes, sir. I collect the rents myself, not through an agent; I do it myself. The property rents for $3,000 a year."

As to the other property, 315–317 East Twenty-Sixth street:

"Q. Do you recollect when you got the property? A. Yes, sir; some day last week. It was before I signed the bond. Q. Was the transaction of the deed as well as the bond about the same day? A. No, sir; the bond was later. This conveyance was directly from my husband to me. The consideration was $1. I did not give my husband anything more for it. Q. And your property consists of the equities of these two houses? A. Yes, sir. Q. Did not your husband transfer the property 315 and 317 East Twenty-Sixth street to you to enable you to go as surety on this bond? A. No, sir. Q. When did your husband first arrange and agree to transfer to you the title to 315–317 East Twenty-Sixth street? A. That has been the understanding and agreement ever since he built the house, that he would give it to me just as soon as it was, and I have been in possession and taking charge of the rents and have kept the rents since the 1st of May, and I gave Mr. Gallagher the money to pay the taxes and interest. Prior to the 1st of May the rent was collected by a young man in Mr. Gallagher's office, who then turned it over to Mr. Gallagher. It is only since the 1st of May that I have been keeping the rent. Prior to that time Mr. Gallagher, through an agent, collected the rents and kept them himself."

And the testimony of Mr. Ennever, who was formerly attorney for plaintiff and was present at the time of her justification. He was

asked if there were any remarks made in the hearing that day by Mr. Gallagher, and answered:

"Mr. and Mrs. Gallagher were there after Mr. Ash left, and Mr. Gallagher said to me, 'She made a very good witness, didn't she?' I said, 'She certainly did.' And he said, 'Every word she said was God's truth.' That he said in the presence of Mrs. Gallagher and myself."

And the claim is that plaintiff, having sat by and heard Mrs. Gallagher testify on her justification as she did, with the subsequent approval thereof expressed to Mr. Ennever, became estopped from denying thereafter her statements that she was the actual owner of the equities in the property over the mortgage then existing thereon. This might be so if third parties were affected, if there was any question of fraud, the concealment of property, an attempt to avoid just obligations or subsequent bankruptcy or insolvency; but as between the two parties to the transaction I do not think that what was said and done in carrying out the alleged agreement was of such character as to estop the plaintiff from showing the real nature of the agreement.

The sole question is: Did he convey the property for the purpose of qualifying her as surety upon bonds to be given for his benefit, under an agreement that, after such bonds were canceled and the rights of third parties thereunder extinguished, she was to deed it back? The documentary evidence very strongly corroborates the plaintiff's story, and upon the disputed question of fact the trial court had the opportunity of hearing and observing the witnesses, and has decided in favor of the plaintiff. This is not a case covered by the statute of frauds, but is one of those cases where equity interposes to prevent the perpetration of a fraud or the abuse of confidence.

Judge Earle said, in Wheeler v. Reynolds, 66 N. Y. 227:

"Where a parol agreement relating to lands has been so far partly performed that it would be a fraud upon the party doing the acts, unless the agreement should be performed by the other party, the court will relieve against this fraud and apply the remedy by enforcing the agreement. It is not the parol agreement which lies at the foundation of the jurisdiction in such a case, but the fraud. So in reference to parol trusts in land. They are invalid in equity as well as in law; but in cases of fraud courts of equity will sometimes imply a trust and will treat the perpetrator of a fraud as a trustee, ex maleficio, for the purpose of administering a remedy against the fraud. For the same purpose it will take the trust which the parties have attempted to create and enforce it, and in such a case the fraud, not the parol agreement, gives the jurisdiction."

In Wood v. Rabe, 96 N. Y. 414, 48 Am. Rep. 640, the action was brought to enforce an oral agreement between the plaintiff and his mother in respect to certain real estate. Judge Andrews said:

"There are two principles upon which a court of equity acts in exercising its remedial jurisdiction, which, taken together, in our opinion entitle the plaintiff to maintain this action. One is that it will not permit the statute of frauds to be used as an instrument of fraud, and, the other, that when a person through the influence of a confidential relation acquires title to property, or obtains an advantage which he cannot conscientiously retain, the court, to prevent the abuse of confidence, will grant relief."

He further held that the relation between parent and child, "if not fiduciary in the strict sense, was nevertheless one ordinarily involving the greatest confidence on one side, and the greatest influence

on the other. * * * It would be a gross wrong to permit that confidence to be betrayed, and we are of the opinion that the statute of frauds cannot be invoked as a bar to relief."

In Goldsmith v. Goldsmith, 145 N. Y. 313, 39 N. E. 1067, a mother had conveyed a piece of property to a son under an oral agreement by the son at the time of the conveyance that he would hold the property in trust for his sisters and brother. The mother subsequently died, and the defendant repudiated the agreement and claimed to be the sole and absolute owner of the property. Judge Finch said:

"It would be a reproach to equity if it proved unable to redress such a wrong. It may be granted that no express trust was created, and that the judgment cannot be sustained on that ground; but we think the case is one in which equity will raise out of the situation, from the grouped and aggregated facts, an implied trust to prevent and redress a fraud, and which trust will be unaffected by the statute of frauds and may properly be enforced. * * * It is true that an intended fraud is not explicitly and by the use of that word charged in the complaint; but all the facts are there, fully and clearly stated, showing the fraud attempted to be perpetrated, and all that is omitted is the word or expression characterizing the necessary inference. We have held that such an omission after judgment is not material where the facts themselves have been sufficiently pleaded."

In Lamb v. Lamb, 18 App. Div. 250, 46 N. Y. Supp. 219, a wife had conveyed certain real property to her husband under an oral agreement, as she claimed, for the sole purpose of enabling him, as her agent and for her benefit, when he effected sales or trades of the property, to execute deeds without the necessity of waiting to obtain her signature thereto. The husband claimed that the deeds were executed to him in pursuance of a verbal antenuptial agreement. The court said:

"The action is to impress a trust upon the premises, and this constitutes an appeal to the equitable power of the court. The husband occupies such a relation of trust and confidence to his wife that, in a case like the present, he is bound to show by unmistakable evidence that the gift was freely and deliberately made, and that the transaction was fair and proper."

And after citing the Goldsmith and Wood Cases, supra, said:

"It would be a monstrous reproach upon equity if it should prove itself unable to redress a wrong such as the evidence discloses."

Jeremiah v. Pitcher, 26 App. Div. 402, 49 N. Y. Supp. 788, was a case in which a father purchased property and caused it to be conveyed to his daughter upon an oral agreement upon her part to convey it upon the order of the plaintiff. The defendant denied the agreement, set up the statute of frauds, and the separate and distinct defense that the conveyance was intended as a gift or advance to her as plaintiff's daughter. There were special circumstances shown for putting the property in the daughter's name. The court said:

"The defendant cannot now plead the statute of frauds to protect her in the ownership of this property. The transaction took place under circumstances which made it impossible, without defeating the end which was sought, to have the trust appear in writing. Under circumstances which peculiarly obligated the daughter to accept the trust, and the plaintiff having parted with the legal title to his property, with no intent to defraud, but to enable him to carry on his business advantageously, and thus to provide for his unfortunate wife and his family, a court of equity would fail in its duty

if it refused to decree a specific performance on the part of the defendant of her part of the agreement. This view of the case is fully sustained by the authorities."

In Ahrens v. Jones, 169 N. Y. 555, 62 N. E. 666, 88 Am. St. Rep. 620, a wife induced her sick husband to give her a deed of certain premises and agreed with him to deliver to his two granddaughters $1,000 each. As soon as he died, she refused to carry out her promise. The court characterized the transaction as an attempt to perpetrate a fraud, and said:

"It is true there is no express trust created by the deed, or by the promise made by the defendant; but, notwithstanding this, a court of equity is not bereft of power to act, for it may interpose to prevent a wrong, and for that purpose it may declare the grantee a trustee ex maleficio for the protection of the grantor's intended beneficiaries. Such a trust does not affect the deed, but acts upon the gift, as it reaches the possession of the grantee, and the foundation of the trust is that equity will then interfere and raise a trust in favor of the persons intended to be benefited in order to prevent a fraud."

Canda v. Totten, 87 Hun, 73, 33 N. Y. Supp. 962, cited by defendant, was reversed by the Court of Appeals (157 N. Y. 281, 51 N. E. 989), where it was said:

"The ground upon which courts of equity have been accustomed to grant relief by way of specific performance to parties to an oral agreement, who have performed in part, is that otherwise one party would be enabled to practice a fraud upon the other, and thus it would sometimes happen that a statute intended to prevent frauds would operate to secure to one party the fruits of fraud."

The relation of husband and wife is of the most confidential character. The complaint alleges, and the court has found, that the plaintiff relied upon the confidence and trust he had in the defendant in making the agreement and performing the terms and conditions thereof on his part. There is no explicit allegation of fraud in the complaint, as there was not in that under consideration in Goldsmith v. Goldsmith, supra; but here, as there, the facts are all fully and clearly stated and the conclusion there reached that such an omission after judgment is not material is conclusive upon us.

Upon the facts as found by the Trial Term, and upon the authorities hereinbefore cited, we are of the opinion that, by reason of the nature of the transactions in question and the confidential relation existing between the parties, the statute of frauds may not be availed of, and that the judgment appealed from should be affirmed, with costs and disbursements to the respondent.

McLAUGHLIN and HOUGHTON, JJ., concur.

INGRAHAM, J. (dissenting). In this action the plaintiff seeks to recover the possession of two pieces of real property which he had caused to be conveyed to the defendant, his wife. The complaint alleges: That the plaintiff conveyed this property to his wife to enable her to qualify as a bondsman to release a mechanic's lien upon certain moneys due to him by the city of New York and for no other purpose; that such conveyance was made under an agreement, whereby the defendant agreed with the plaintiff that, if plaintiff would

transfer such real property to her, she would hold the title in trust for him and would convey the property on demand of the plaintiff to any person or persons to whom plaintiff would sell the same, and would immediately turn over the proceeds of such sale to the plaintiff; that, in case the plaintiff should not sell the premises, this defendant would then on demand of the plaintiff convey the said premises to the plaintiff, or to any person to whom the plaintiff directed her to convey said premises; that the plaintiff never intended to convey said premises to the defendant other than as stated; and that subsequently, and before the commencement of the action, the plaintiff requested and demanded of the defendant that she convey the premises to the plaintiff personally, which she has refused to do. As to the second piece of property, it was conveyed to the defendant by third parties, and the complaint alleges: That the plaintiff had been the equitable owner of these premises; that the defendant entered into an agreement by which she agreed to hold the property in trust for him, would qualify as bondsman if necessary on bonds required by him, and would convey the said premises on demand to any person or persons to whom the plaintiff would sell the same, or would on demand of the plaintiff convey the premises to the plaintiff; that, relying on such promise and agreement, he caused the property to be conveyed to the defendant by one McKew and wife. These several conveyances were fully recorded, and the defendant became the record owner of the property.

The court found: That the plaintiff and defendant entered into an oral agreement, whereby the plaintiff agreed to convey to the defendant certain real property in the city of New York and placed the title in the name of the defendant for the purpose of enabling the defendant to qualify on plaintiff's bond as surety for contract work and as surety to bond liens and judgments whenever the same might arrive in the conduct of the plaintiff's business; that, after the bonds upon which the defendant was surety were satisfied, the defendant would convey all of the premises so conveyed to her back to the plaintiff, or to anybody he might name upon plaintiff's demand. It is not claimed that this contract was in writing, or that there was any writing between the parties by which the defendant agreed to hold the property in trust for the plaintiff, or to reconvey the property to the plaintiff upon his demand. There is no fraud found; nothing but a conveyance by a husband to his wife of real property which concededly vested the legal title in her, with an oral agreement that the wife should convey the property back to the husband upon demand.

Assuming that these findings are sustained by the evidence, the court has here attempted to specifically enforce an oral agreement to convey land, and, unless we are to repeal the statute, it seems to me that this judgment cannot be sustained. By section 207 of the real property law (chapter 547, p. 592, Laws 1896), it is provided that:

"An estate or interest in real property, other than a lease for a term not exceeding one year, or any trust or power, over or concerning real property, or in any manner relating thereto, cannot be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the person creating, granting, assigning,

surrendering or declaring the same, or by his lawful agent, thereunto authorized by writing."

And this provision is re-enacted as section 242, c. 50, of the Consolidated Laws (chapter 52, Laws 1909). And by section 224 of the real property law it is provided that:

"* * * A contract for the leasing for a longer period than one year, or for the sale of any real property, or an interest therein, is void, unless the ·contract, or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the lessor or grantor, or by his lawfully authorized agent."

And by section 74 of the real property law:

"A grant of real property for a valuable consideration, to one person, the consideration being paid by another, is presumed fraudulent, as against the creditors, at that time, of the person paying the consideration, * * * but the title vests in the grantee, and no use or trust results from the payment to the person paying the consideration, or in his favor, unless the grantee either: (1) Takes the same as an absolute conveyance, in his own name, without the consent or knowledge of the person paying the consideration, or (2) in violation of some trust, purchases the property so conveyed with money or property belonging to another."

It seems to me that these provisions expressly prevent the enforcement of an oral trust in real property or an oral agreement to convey real property, and, in the absence of fraud of which there is neither a finding or proof, the court is powerless to aid the plaintiff.

The exact question presented in this case was presented to the General Term in the Second Department in McCahill v. McCahill, 71 Hun, 221, 25 N. Y. Supp. 219. There is no case cited which sustains this judgment. It seems to me that such an oral contract, in the absence of fraud, cannot be enforced without disregarding the statute.

I therefore think the judgment should be reversed.

SCOTT, J., concurs.