JAMES TIEDEMANN, Plaintiff, *v.* MARIA TIEDEMANN, WILLIAM FISHER and RUTH C. FISHER, his wife, Defendants.

(Supreme Court, Queens Special Term for Trials, May, 1921.)

**Contracts — oral agreement to reconvey real property upheld — husband and wife — fraudulent conveyances — Statute of Frauds.**

> At the time when plaintiff, a truckman, had an accident on a railroad a boy riding with him was killed. In an action against the railroad company on his cause of action plaintiff recovered judgment and in fear of an action against him by the parents. of the boy, he gave his wife a deed of conveyance of the premises where the family lived, upon her oral agreement to reconvey the property to him at any time. Thereafter he improved the premises and built a stable, paid all the taxes and insurance, besides paying off a mortgage on the property. Subsequently the wife, having left her husband, who is still in possession, without consultation with him, conveyed the property to a neighbor and received and retained the consideration paid. In an action to compel a reconveyance of the premises and for cancellation of the purchase money bond and mortgage made by the alleged innocent purchaser to plaintiff's wife, she testified that she did not remember the conversation which resulted in her oral agreement to reconvey. *Held*, that the plaintiff's version, upon which the court must rely, clearly upheld the contention of the plaintiff as to the oral agreement to reconvey.
>
> The alleged innocent purchaser, who knew both plaintiff and defendant and who was in the court room at the trial but did not take the stand, held not to be a purchaser in good faith, and that plaintiff was entitled to the relief asked for.

ACTION to compel reconveyance of real property founded upon an oral agreement and for cancellation of purchase money mortgage.

Rawdon W. Kellogg, for plaintiff.

Elmer J. Ashmead, for defendant Maria Tiedemann.

Adolph Herzog, Jr., for defendant William Fisher.

DIKE, J. The problem here is, does the Statute of Frauds act as an insuperable obstacle to the reconveyance of the premises in question to the plaintiff, and to the cancellation of the purchase money, bond and mortgage made by the alleged innocent purchaser, William Fisher, to Maria Tiedemann, wife of plaintiff?

Plaintiff Tiedemann and defendant Maria Tiedemann are husband and wife. They have two children, one fifteen and the other eleven years of age. Plaintiff is a truckman, working for the city. Several years ago he bought a small house in Queens on plot of two lots, taking title in his own name, and in these premises he lived with his family. The complaint alleges, and the evidence shows, that plaintiff had an accident on the Long Island Railroad in November, 1918. At that time a boy riding with the plaintiff was killed. Plaintiff sued the railroad company and recovered on his cause of action, and, fearing that some action might be started against him by the parents of the boy, the matter was talked over with his wife, and the plaintiff said: " I guess I better sign the house over to you. You can keep it for a home for us. So she says, all right. Now, I said to her, can I have this place back at any time I want it. She says, yes, two or three years — any time you want it back, you can get it back." Plaintiff thereupon deeded the property to the defendant, his wife, for the consideration of $1, and in so doing, denuded himself of all property, save the horses and truck. Since that time, the plaintiff has improved the property, putting water into the house and building a stable on the place big enough to stable four horses, and testimony is that to replace it would cost about $1,200. He has improved the surroundings of the house and added to its value in other ways, and plaintiff alleges that he received an

offer of $4,000 for the house some time last fall. The plaintiff paid all the taxes and the insurance, also paying off a mortgage of $100. The defendant Maria Tiedemann, with her children, left her husband, who is still in possession, however, and thereafter, on December 5, 1920, meeting the defendant Fisher on a trolley car, spoke to him about the purchase of the property in question. She had known defendant Fisher, a neighbor, about three years. The agreed price for the transfer of the property to Fisher was $2,500. She did not consult her husband, and it does not appear that she consulted anybody else as to the consideration. Fisher agreed at once to purchase it for that price and on the following day, at the office of the attorney for Fisher, a memorandum of a payment of $100 was drawn up and signed, which sum the defendant Maria Tiedemann retained. The deed being delivered the following day at the office of the attorney of defendant Fisher, the defendant Maria Tiedemann received the sum of $900, and a bond and mortgage of $1,500, and retained all of these.

The circumstances here are certainly persuasive in their collective force of a fraud upon the plaintiff, a breach of the oral agreement between husband and wife. Earl, J., in the case of *Wheeler* v. *Reynolds,* 66 N. Y. 227, 236, says: " It is a mistake to suppose that parol agreements relating to lands are any more valid in equity than at law. They are always and everywhere invalid. But courts of equity have general jurisdiction to relieve against frauds, and where a parol agreement relating to lands has been so far partly performed that it would be a fraud upon the party doing the acts, unless the agreement should be performed by the other party, the court will relieve against this fraud and apply the remedy by enforcing the agreement. It is not the parol agreement which lies at the

foundation of the jurisdiction in such a case, but the fraud. So in reference to parol trusts in lands. They are invalid in equity as well as in law. But in cases of fraud courts of equity will sometimes imply a trust and will treat the perpetrator of the fraud as a trustee, *ex maleficio*, for the purpose of administering a remedy against the fraud.''

A uniform series of authorities clearly uphold the rigid rule of the Statute of Frauds but clearly enunciate the rule that the Statute of Frauds cannot be used as an instrument of fraud. In the case of *Wood* v. *Rabe,* 96 N. Y. 414, 425, Danforth, J., says: '' There are two principles upon which a court of equity acts in exercising its remedial jurisdiction, which taken together in our opinion entitle the plaintiff to maintain this action. One is that it will not permit the statute of frauds to be used as an instrument of fraud, and the other, that when a person through the influence of a confidential relation acquires title to property, or obtains an advantage which he cannot conscientiously retain, the court, to prevent the abuse of confidence, will grant relief.

'' ' The statute of frauds,' observes Lord Redesdale in *Bond* v. *Hopkins* (1 S. & L. 433), ' says that no action or suit shall be maintained on an agreement relating to lands which is not in writing, signed by the party to be charged therewith; and yet the court is in the daily habit of relieving where the party seeking the relief has been put into a situation which makes it against conscience in the other party to insist on a want of writing so signed, as a bar to his relief.' ''

In *Wheeler* v. *Reynolds,* 66 N. Y. 227, Earl, J., speaking of parol trusts in lands, writes: '' They are invalid in equity as well as in law. But in cases of fraud courts of equity will sometimes imply a trust and will treat the perpetrator of the fraud as a trustee, *ex*

30

*maleficio,* for the purpose of administering a remedy against the fraud. For the same purpose it will take the trust which the parties have attempted to create and enforce it; and in such a case the fraud, not the parol agreement gives the jurisdiction.''

In the instant case there is no evidence that the plaintiff was endeavoring to defraud his creditors. The complaint would indicate a *fear* of an action, which evidently and obviously was not based upon fact as there has been no action brought against the plaintiff, and therefore all the authorities which so strongly uphold the rights of creditors seeking property of a fraudulent debtor do not apply. The plaintiff was obsessed by a fear and that does not place him, in my judgment, in the category of debtors seeking to avoid their just debts. On the contrary, the plaintiff's motive was a good one — the establishment of a home for his family, with the right, however, if necessary at a later time to have the property reconveyed to him. The case of *Goldsmith* v. *Goldsmith,* 145 N. Y. 313, which involved the trust and confidence arising out of family relations, as in the instant case, decided in this department and sustained by the highest court, reiterates this rule. The influence which the law presumes between husband and wife is that influence which is superinduced by the relations between them and generated in the mind of one by the confidence and trust which he has in the devotion and fidelity of the other. Such influence the law presumes undue whenever that confidence is subsequently violated or abused. The test is the betrayal of the confidence imposed, and some breach of duty owed under it, and one chargeable with a trust of this nature becomes a trustee *ex maleficio. Lamb* v. *Lamb,* 18

App. Div. 250; *Dressel* v. *Hanser,* 101 Misc. Rep. 574; *Trice* v. *Comstock,* 121 Fed. Repr. 620.

The plaintiff relies upon the case of *Gallagher* v. *Gallagher,* 135 App. Div. 457, first department, where the plaintiff conveyed property to his wife for the purpose of qualifying her as surety upon bonds to be given for his benefit under an agreement, and after such bonds were cancelled and the rights of the third party extinguished, she was to deed it back. " This is not a case," said Clark, J., " covered by the Statute of Frauds, but is one of those cases where equity interposes to prevent the perpetration of a fraud or the abuse of confidence." Mr. Justice Ingraham, in *Gallagher* v. *Gallagher, supra,* wrote a dissenting opinion, but it was because he found *no element of fraud.* As said by him in his opinion: " It seems to me that these provisions expressly prevent the enforcement of an oral trust in real property or an oral agreement to convey real property, and in the absence of fraud, of which there is neither finding nor proof, the court is powerless to aid the plaintiff."

The facts and circumstances relating to the transfer by plaintiff to his wife, must be looked for in his statement of the conversation prior to the transfer. The defendant, Maria Tiedemann, practically and in effect, does not even deny the conversation. Her testimony upon that most important point was only this: " I really don't remember the conversation." This leaves the plaintiff's version as the one upon which the court must rely, and would clearly uphold the contention of the plaintiff as to the oral agreement to reconvey.

As to the alleged innocent purchaser, defendant Fisher, I am unable to regard him in that light. The evidence seems to me to negative the element of innocence. He knew both plaintiff and defendant; he

Supreme Court, May, 1921. [Vol. 115.

lived a short distance away from them; the circumstances surrounding the sale — so casual, so informal and so utterly lacking in all of the safeguards relative to such a transaction; the inadequacy of the consideration, so much lower than the value of the property, as fixed by plaintiff; the hasty conclusion of the contract of purchase; the plaintiff being in possession, and the defendant Maria Tiedemann and her children not residing on the premises — all these elements force me to the conclusion that he is not a purchaser in good faith. In the case of *Lang* v. *Lang,* 131 N. Y. Supp. 891, an action similar in many respects to this, Jaycox, J., in his opinion, says: "The defendant Mueller stands in no better position than the defendant Lang. He took his deed when the premises were in the open and notorious possession of the plaintiff. This being so, he is charged with a knowledge of the exact rights of the person so in possession."

Later, Mr. Justice Jaycox said: "It must be assumed that he knew that the plaintiff lived upon the premises, and that the defendant Lizzie Lang did not live upon the premises. This would charge him with notice that the plaintiff was in possession, and thereby charge him with knowledge of any right which the person in possession is able to establish."

The defendant Fisher (the purchaser) was in the court room at the time of the trial but did not take the stand.

I have examined the cases relied upon by the defendants William Fisher and Ruth C. Fisher, but I do not feel that they are applicable to this situation; nor can I acquiesce in the argument of the attorney for the defendant Maria Tiedemann, that the plaintiff does not come into court with clean hands. Fraud must be alleged and proved by the party of whom advantage

has been taken. *Bailey* v. *Ryder,* 10 N. Y. 363; *Gould* v. *Gould,* 51 Hun, 9. This the plaintiff has done.

I therefore hold that the plaintiff should prevail and I decree judgment asked for in the complaint.

Judgment for plaintiff.