Antonio Buszozak and Another, Plaintiffs, *v.* Tony Wolo and Another, Defendants.

Supreme Court, Jefferson County, March 17, 1925.

Deeds — delivery — deed not effective as grant in absence of delivery by grantor and acceptance by grantee, with mutual intent to pass title from one to other — action in equity to have canceled of record deed of premises executed by plaintiffs to defendants — plaintiffs, fearing premises would be confiscated by Federal government after conviction for violation of National Prohibition Act, executed deed of premises to defendants without apprising them of transaction — said deed duly recorded and mailed to defendants, together with second deed of same premises and letter reciting fear of confiscation of property, and requesting defendants to reconvey — recording of deed did not raise presumption of acceptance — oral evidence may be offered to show delivery or acceptance — recording and transmission of deed to defendants, accompanied by deed to be executed and reconveyed by them, insufficient to constitute delivery — evidence insufficient to show acceptance of deed — plaintiffs entitled to decree canceling of record deed executed in defendants' favor — plaintiffs not precluded from equitable relief by reason of acts.

A deed becomes effective as a grant only where there is a delivery by the grantor and an acceptance by the grantee, with a mutual intent to pass the title from one to the other. In the absence of an intention on the part of the grantor to part presently and unconditionally with the deed, there is no delivery. Nor is there delivery unless the grantee accepts the deed with a like intent.

Accordingly, plaintiffs are entitled to a decree canceling of record a deed recorded in the clerk's office of Jefferson county, where it appears that the plaintiffs, fearing that said premises would be confiscated by the Federal government by reason of their conviction for a violation of the National Prohibition Act, executed a deed of said premises to defendants without apprising them of the transaction; that said deed was duly recorded and mailed to the defendants, together with a second deed of the said premises, wherein the defendants were named as grantors and the plaintiffs as grantees, and a letter reciting their fear of confiscation of their property by the Federal government and requesting that the defendants execute the second deed; that defendants refused to execute the deed transferring the title back to plaintiffs, and that plaintiffs at all times had been in possession of the property, receiving the rents therefrom and paying the taxes thereon.

The recording of the deed and its transmission to the defendants, accompanied by the deed to be executed by them, was insufficient to constitute delivery or acceptance, in view of the absence of an intent to pass title and of defendants' lack of knowledge of the transaction, and their failure to perform the conditions with respect to the reconveyance.

*It seems,* that the recording of a deed by the grantor does not raise a presumption of acceptance, where the grantee is *sui juris* and has no knowledge of the recording.

Oral testimony may be offered to show whether or not there has been a delivery or acceptance of a deed.

Moreover, the delivery of the deed herein was a delivery upon the condition that the defendants should execute a reconveying deed. The failure of the defendants to allege acceptance of the deed, their return of the second deed unexecuted, and the subsequent return of the recorded deed itself, is insufficient to show acceptance of the deed by the defendants.

Plaintiffs are not precluded from equitable relief by reason of the transaction, in the absence of any act by which they sought to put their property out of their hands to evade the just claims of creditors.

ACTION in equity to have canceled of record a deed drawn by the p'aintiffs to the defendant Tony Wolo, or, in the event it should be determined that there was a delivery of the deed, that the defendants be required to specifically perform a contract to deed and convey said premises to the plaintiffs, and for such other, further or different relief as may be just and equitable.

*Breen & Reeves,* for the plaintiffs.

*Arthur L. Cohen* [*Clarence L. Crabb* of counsel], for the defendants.

SMITH, J.:

There is no dispute as to the essential facts. They are in the record by stipulation of the parties. Aside from stipulating the facts, the defendants offered no proof at the trial.

The plaintiffs are husband and wife, and on the 29th day of December, 1921, were owners as tenants by the entireties of the real estate described in the complaint, which had a value of approximately $4,500. The defendant Tony Wolo is a brother of the plaintiff Rose Buszozak. The plaintiffs at the time of the transaction here under consideration resided upon the property in question, and the defendants in the city of New Haven, Conn. Sometime prior to the 29th day of December, 1921, the plaintiffs plead guilty to the charge of having violated the liquor law of the State of New York in that they had intoxicating liquors in their possession, for which offense they were fined and paid the fine. Thereafter the plaintiffs were informed by an attorney of this court that the Department of Justice of the Federal government might, acting under the so-called Volstead Act, take and confiscate the real property of the plaintiffs on account of the crime for which they had been indicted under the laws of the State of New York, and advised them that they had better deed the property to someone who would deed it back. The plaintiff Rose told said attorney that the plaintiffs would convey the property to their brother Tony Wolo. Without consulting with the defendant Wolo, and without his knowledge or consent, the plaintiffs in accordance with advice of counsel on December 29, 1921, executed, acknowledged and left for record in the clerk's office of Jefferson county the deed of the

premises in question, and after record the deed was taken from the clerk's office by the plaintiffs.

At the same time and concurrently with the making and execution of said deed, the attorney for the plaintiffs prepared a second deed, dated January —, 1922, wherein the defendants were named as grantors and the plaintiffs grantees, describing the said premises. On December 29, 1921, the day of the execution and record of the deed by the plaintiffs as aforesaid, the plaintiff Rose Buszozak wrote to the defendant Tony Wolo a letter which reads as follows:

" Dear brother: We are informed that all those who were caught and punished for selling liquor were punished by heavy fines, one a fine by the State and the other to Washington, and it appears we will have to pay about $2300. Whoever has the money gets out of it by paying his fine and those who cannot pay have their property confiscated by the State. So our lawyer has advised us to transfer the property to some other person whereby we can avoid serious consequences, so we have transferred it to you. Just as soon as you have received the deeds to this property, sign them, with your wife, in places indicated and act quickly. Then we can avoid serious consequences in so far as our money is concerned. We can also arrange therefor."

Immediately after the record of the deed by the county clerk of Jefferson county on December 29, 1921, the deed was given by the clerk's office to the plaintiffs, and it and the deed to be executed by the defendants were mailed to the defendant Tony Wolo, who received said deeds and the letter above set forth. The defendants did not then execute, nor have they at any time executed the deed prepared for such purpose. There was subsequent correspondence in which the plaintiff Rose urged the defendant Tony to send back the deed. On the last day of June or the 1st of July, 1922, the plaintiffs went to the defendants in New Haven, Conn., and asked that the defendants execute a deed of the property to the plaintiffs. Tony Wolo said in effect to come the next day about eleven o'clock and they would get a lawyer and sign it over. He asked for two hundred dollars. On the next day Tony Wolo and Tony Buszozak went to a lawyer and came back to the plaintiff Rose with the papers. The plaintiff Rose gave to the defendant Tony sixty-five dollars, and promised to send him fifty more the following Thursday, and he said, giving back the deed of December twenty-ninth and the other deed: " Here is the papers what kind you let me have. Here is your papers back, what kind of papers you let me have you got them back." And the plaintiffs took both deeds away and returned to Watertown, where they found that the proposed deed from the defendants to the plaintiffs had

not been executed. Later in the fall of 1922 the plaintiffs went to New Haven, Conn., and asked the defendants to execute the deed transferring the title back, which they refused to do. The plaintiffs at all times have been in possession of the property, receiving the rents therefor and paying the taxes thereon.

No action, criminal or otherwise, was ever brought against the plaintiffs by the United States government, nor was there any justification at any time for the fear of the plaintiffs that their real property was in any peril on account of any claim which the Federal government might have against it by reason of any violation of the liquor laws. The plaintiffs are Polish people, ignorant, and were wrongly advised, and did as they were advised, as such people are wont to do.

The plaintiffs contend that there was never any delivery of the deed and pray for a decree canceling the record thereof; they further contend, if it be found as a fact that there was delivery of the deed, that there was a contract pursuant to which the defendants agreed to reconvey the premises to the plaintiffs, and that a decree of specific performance of this contract should be granted. The plaintiffs also suggest that on account of the confidential relations existing between the plaintiff Rose and her brother Tony, that the deed in his hands was imposed with a trust in behalf of the plaintiffs.

The answer is not verified by the defendants but by their attorney; it alleges that the plaintiffs executed the deed in question, recorded it and mailed it to the defendants. They nowhere allege acceptance on their part of the deed, but do allege that such transfer was made for the sole purpose and with the wrongful and fraudulent intent to defraud the government of the United States and the authorities thereof having in charge the enforcement of the national prohibition act. By failure to allege acceptance of the deed on their part, the defendants avoid an allegation which would have made them participants in the very fraud which they allege the plaintiffs attempted to commit, but nevertheless seek to obtain the benefits of the transaction by invoking the equitable maxim that the plaintiffs are not entitled to the relief sought on the ground that they do not come into court with clean hands.

It is academic that before a deed becomes effective as a grant there must be delivery and acceptance; a giving by the grantor and a receiving by the grantee, with the mutual intent to pass the title from one to the other. Delivery is the act of the grantor; acceptance is the act of the grantee. Much confusion of thought has arisen from the fact that delivery has been interpreted so as to include not only the act of the grantor in physically handing

over the deed but as well the act of the grantee in accepting the deed. It has been interpreted as if *delivery* alone effected what is known as " livery of seizin." In order that there may be a good delivery, dominion over the deed must pass from the grantor, with intent on his part to pass the title to the grantee if he accepts the grant. If the grantor does not evidence an intention to part presently and unconditionally with the deed there is no delivery; nor is there any delivery unless the grantee accepts the deed with a like intent.

Now, with respect to delivery as well as with respect to acceptance, certain presumptions have arisen. Under the decisions in the State of New York the recording of the deed by the grantee raises a presumption of delivery. It is generally held, outside of the State of New York, that where a grantee is *sui juris* and has no knowledge of the recording of the deed and does not assent thereto the mere fact of the recording of the deed is insufficient to constitute a delivery. The weight of authority in the State of New York, however, is that the recording of the deed creates a presumption of acceptance on the basis of assumed benefits to the grantee. Whether this should be or is the rule as to grantees *sui juris* and *in esse* at the time the question arises, I doubt. Can such a grantee, ignorant of the record and of the grant, in an action where he is a party, be presumed from the record alone to have accepted? The question reveals the absurdity of an affirmative answer. The proper application of the presumption is in cases where death or the rights of third parties have intervened. Of course these presumptions are not conclusive but rebuttable presumptions, and, so far as both the act of delivery and the act of acceptance are concerned, may be rebutted by the same evidence that would be competent in rebuttal of any other presumption of fact. (*Souverbye* v. *Arden*, 1 Johns. Ch. 239; *Jackson* v. *Dunlap*, 1 Johns. Cas. 114; *Jackson* v. *Phipps*, 12 Johns. 418; *Jackson* v. *Bodle*, 20 id. 184; *Church* v. *Gilman*, 15 Wend. 655; *Gilbert* v. *North Am. Fire Ins. Co.*, 23 id. 43; *Rose* v. *Rose*, 7 Barb. 174; *Rathbun* v. *Rathbun*, 6 id. 98; *Doorley* v. *O'Gorman*, 6 App. Div. 591.)

The above cited cases are sufficient authority for the proposition that as to whether or not there was either a delivery or acceptance may be shown by oral testimony.

The distinction between cases where there was no delivery at all and cases where there was a delivery upon condition should be kept clearly in mind. In *Gilbert* v. *North Am. Fire Ins. Co.* (*supra*) this language is used: " If the grantor do not intend that his deed shall take effect until some condition is performed, or the happening of some future event, he should either keep it

himself, or leave it with some third person as an *escrow*, to be delivered at the proper time. If he deliver it as *his deed* to the grantee, it will operate immediately, and without any reference to the performance of the condition, although such a result may be contrary to the express stipulation of the parties at the time of the delivery. This is one of the cases in which the law fails to give effect to the honest intention of the parties, for the reason that they have not adopted the proper legal means of accomplishing their object."

This is strong language and is in the case *obiter dictum*, as appears by the facts of the case and the decision in it; the deed was physically delivered to the grantee, with a direction that he forward it to a third person to be held by the latter until a certain controversy should be settled. Here were oral instructions at the time of the delivery of the deed to the grantee, and the court says: that the deed " was not put into the hands of the grantee to keep *but merely as a mode* of transmission to another. * * * There was neither any formal delivery, nor any intent that the grantee should take it as the deed of the grantor. Nottingham (the grantee) received it, not as *grantee* but as the *agent* of the grantor for a special purpose. * * * The fact that the deed had been recorded was only *prima facie* evidence of a delivery, which might be rebutted."

In *Doorley* v. *O'Gorman* (*supra*) this language is used: " While it is undoubtedly true that the record of a deed is presumptive evidence of delivery, there is no rule that such record is conclusive upon the question, and the party against whom delivery is claimed may show the circumstances under which the record was made so as to rebut the presumption. It is a familiar principle that no written contract can be executed without a delivery of the contract. Delivery is as necessary a part of the execution as the signing and sealing of the instrument. Delivery to a third party in escrow is not a complete delivery; and delivery to the register for the purpose of recording is not a delivery if it appears that it was not intended to operate as such."

It is true that oral testimony may not be offered to show that a deed was delivered with conditions attached to the delivery. It is the general rule in this State, with respect to every instrument excepting a deed, and possibly — but not so clearly — with respect to any specialty, that oral testimony may be offered to show a condition precedent but not a condition subsequent. As to deeds of real estate, however, the holdings are clear that, there being delivery of the deed by the grantor, a parting with dominion over the deed with intent to pass the title, oral testimony as to any condition

attached to the delivery may not be offered. (*Gilbert* v. *North Am. Fire Ins. Co.*, 23 Wend. 43; *Blewitt* v. *Boorum*, 142 N. Y. 357; *Hamlin* v. *Hamlin*, 192 id 164; *Stiebel* v. *Grosberg*, 202 id. 266; *LaFayette Street Church Society of Buffalo* v. *Norton*, Id. 379.)

In these cases it is substantially held, not as a rule of evidence but as a rule of law, that oral testimony is inadmissible for the purpose of limiting the effect the law attributes to the delivery of a deed to a grantee, since any oral condition accompanying the delivery in such case would be repugnant to the terms of the deed.

But these decisions do not apply to cases where there has been no actual delivery of the deed.

In *Hamlin* v. *Hamlin* (*supra*) there was a finding of fact that there had been a delivery of the deed, and it was sought to show that the delivery of the deed by the wife to the husband was upon condition, and the necessary inference from the testimony of the plaintiff was that of sufficient delivery to pass title. And the court well stated: " With that fact established in the case, there remains but little tenable ground for the plaintiff's position that her delivery of the deeds was conditional and that it was not the intention of either party that the conveyances should be effective at the time of delivery."

The holding in this respect is based upon the proposition that to allow oral testimony as to conditional delivery of a deed actually delivered would be to permit all evidence repugnant to the terms of the instrument itself. In that case, according to plaintiff's own testimony, she intended to convey to her husband. " It was not a case where the deeds were not to pass out of the possession of the grantor, until certain conditions were fulfilled."

Under the circumstances of the instant case, however, was there any delivery of the deed at all? The purpose of the plaintiffs was clear, and the letter from the plaintiff Rose to the defendant Tony Wolo December 29, 1921, a date preceding the transmission of the deed, and the very date of the record of the deed, could not be misunderstood by him. He knew what the plaintiffs intended when they forwarded the deed in question, accompanied by the deed to be executed by him and his wife. There was no intent here to part with the title to the property, excepting that simultaneously with such parting the defendants executed and returned the reconveying deed. The defendants parted with no consideration; they knew nothing about the transaction, had negotiated no purchase; nor was a gift in contemplation; possession was not delivered. They knew the plaintiffs did not intend to make any delivery of the deed excepting as of the time when the reconveying deed was

executed and delivered. It would have been an act of usurpation on the part of the defendant Tony Wolo to have accepted this deed without compliance with the instructions; and until such compliance there could not be nor was there intended to be any delivery of the deed. Said defendant was not in position to accept the delivery of the deed, excepting that at the same time he made the conveyance back. The circumstances entirely rebut any presumption of delivery arising from the record of the deed, which was made without the knowledge or consent of said defendant, or from mailing of the deed to him.

The letter of December 29, 1921, written by the plaintiff Rose to the defendant Tony Wolo and received by him, was admitted in evidence without objection. It would be an absurdity in the law indeed if, in a case where the grantor transmits a deed to a grantee accompanied by a letter stating in effect that the grantee could accept the deed upon payment of the consideration and the grantee receiving the deed fails to pay the consideration and retains the deed, it could be held that the transmission of the deed constitutes a delivery. This would not be a delivery upon condition, but no delivery at all. The delivery would not take place until the acts required to be performed were actually performed by the party named as grantee.

If, however, my view of this mixed question of law and fact in the case should be found to be erroneous and it could be found that there was a delivery of the deed, still it was a conditional delivery, and the condition was that the defendant should execute a reconveying deed; and this would be a valid condition the proof of which does not depend upon oral testimony. The condition upon which the deed was mailed is not proved by oral testimony but was expressed in a letter which was mailed to the grantee at or prior to the time when he received the deed.

Assuming delivery, there arises another question: Was there an acceptance of the deed by the grantee? One cannot impose a grant of real estate upon another by simply executing, recording and mailing a deed. There may be a presumption of acceptance from the beneficial nature of the transaction, but still there must be acceptance, and acceptance must be found as a fact. What evidence is there of acceptance? Actual acceptance is not alleged in the answer of the defendants. Of course there could not have been an acceptance excepting upon compliance with the conditions. But, aside from that, is there any evidence here to show acceptance? There must have been an intention to accept. It is true that Tony Wolo and his wife, the defendants, did not execute a return deed. Plaintiffs could not by their act alone impose upon them

the duty to do that unless they had accepted the deed.    As a matter of fact the defendants simply did nothing.    They have left the plaintiffs alone to get out of the difficulties created by the record of the deed as best they could.    They have returned the reconveying deed unexecuted, and later returned the deed itself; and, were it not for the testimony to the effect that Tony Wolo desired a few dollars in money before he would sign a deed for the purpose of clearing the record, we would have the case of a party to whom one had sought to make a conveyance without his knowledge or consent and who never accepted but actually returned the deed transferring the title to him.    There is here not only no sufficient evidence of acceptance, but the evidence leads to the conclusion that there was a refusal to accept.

Again, if it could be found that there was a delivery and that there was an acceptance and that therefore the deed conveyed the title, then we have a situation where the grantee in accepting the deed accepted the conditions of the delivery and has, therefore, by implication promised to reconvey and has broken his promise by refusing to reconvey.    On this condition alone could there have been a contract in this case.    This was not a gift of real property. Under such circumstances I am inclined to think the plaintiffs would be entitled to a decree of specific performance of a contract.

It it unnecessary, in the view taken, to pass upon the question whether a trust could be impressed upon the title in the hands of Tony Wolo; he occupied a very confidential relationship to the plaintiff Rose; he was her brother; she evidently reposed faith in him.    Had the action been brought and tried on this theory, possibly a trust might have been impressed upon the title in his hands.    " A court of equity, finding an abuse of confidence, might give relief upon the ground of fraud."    (*Melenky* v. *Melen*, 233 N. Y. 19–22 and cases cited.)

Holding the views I have expressed, I think the plaintiffs would be entitled to a decree canceling of record the deed to Tony Wolo, were it not for the consideration of the question whether equitable relief can here properly be invoked.

The maxim is that " he who would come into a court of equity must come with clean hands."    This does not mean that he who comes into equity must be a clean person or even that he must be a person of good character or without a criminal record, but it means that his actions with respect to the particular transaction under consideration must not have been such that the conscience of the court revolts at granting the relief sought.    The cases in which this maxim is usually applied arise where parties have put their property out of their hands to evade the just claims

of creditors. Under such circumstances, with some exceptions, a court of equity will leave a grantor in the bed which he has made. No rights of creditors are here involved. There is no pretense that these parties were indebted to anyone. On the contrary, they had money in the bank and other personal property at the time.

In this case we have ignorant people who had been guilty of violation of the Federal and State laws against traffic in intoxicating liquors, who had pleaded guilty to violation of the State law, had been fined and paid the fine. Had they made no move to transfer their real estate, nothing would or could have happened to it. The statement to them by an attorney that the Federal government might under the circumstances assess their real estate for penalties and thereby deprive them and their children of it created in their minds a state of terror, and unhesitatingly they followed the advice of counsel. It was bad advice from whatever standpoint it may be considered; there was no basis in law for it. They became frightened and in their fright did what they did upon bad advice of counsel. They sought to protect their home and their children. No action has been taken and none could have been taken by the Federal government which could have affected in any wise the title to the plaintiff's property. It can scarcely be held that where a person who seeks to avoid the consequences of illegal efforts of others places his property beyond the reach of those who would illegally attack it for the purpose of avoiding the annoyance of such illegal conduct he has been guilty of an unconscionable act.

In *Tiedemann* v. *Tiedemann* (201 App. Div. 614; affd., 236 N. Y. 534) the plaintiff was in fear of an action being brought against him on account of negligence and transferred his property. The decree at Special Term was for the plaintiff; the trial justice in handing down his decision wrote as follows: " The plaintiff was obsessed by a fear and that does not place him, in my judgment, in the category of debtors seeking to avoid their just debts. On the contrary, the plaintiff's motive was a good one—the establishment of a home for his family, with the right, however, if necessary at a later time to have the property reconveyed to him." He was in " fear of an action, which evidently and obviously was not based upon fact as there has been no action brought against the plaintiff, and therefore all the authorities which so strongly uphold the rights of creditors seeking property of a fraudulent debtor do not apply." (*Tiedemann* v. *Tiedemann*, 115 Misc. 462, 466.)

On affirmance the Appellate Division said (at p. 618): " If he feared a lawsuit I see no justification on the evidence for the inference that he was endeavoring to defraud anyone. There is

no evidence of any debt or liability on his part, and the objections of my dissenting brethren are based on the inference that there was a debt, and secondly on the inference that if there was a debt he was endeavoring to avoid it. None of the decided cases go to this extreme."

The defendants do not allege that they accepted the delivery of the deed and that they thereby became participants in what they allege was a fraud attempted to be practiced upon the government of the United States. The Statute of Frauds was enacted to prevent fraud, and the courts have successfully prevented its use for the purpose of perpetrating a fraud. By analogy, this maxim may not be invoked by those who themselves are not seeking the ministrations of a court of equity with clean hands.

I am, therefore, of the opinion that the plaintiffs are entitled to the relief sought on any of the grounds stated. In the end the effect is the same whether cancellation of the record or specific performance be decreed. I am so firmly convinced, however, that there was no delivery or acceptance of the deed, that I feel a decree should be entered canceling of record the deed dated December 29, 1921, and recorded in Jefferson county clerk's office December 29, 1921, in liber 366 of Deeds at page 263. The plaintiffs will prepare proper findings of fact and conclusions of law to be settled, if not agreed upon, on two days' notice.

Decreed accordingly. No costs.