JOSEPH C. BARTOS, Plaintiff, *v.* MARY BARTOS and Others, Heirs at Law of MERI BARTOS, Deceased, Defendants.

Supreme Court, Broome County, October 13, 1930.

*Arthur J. Ruland* [*Herman Nehlsen* of counsel], for the plaintiff.

*G. Mead Willsey,* guardian *ad litem,* for the defendants.

PERSONIUS, J. The plaintiff is the father of the defendants who are all infants. On May 29, 1924, the plaintiff and his wife, Meri (tenants by the entirety of certain real property), deeded it to Frank Pichlar, who, with his wife, thereupon deeded it to plaintiff's wife, Meri, individually. In August, 1928, Meri died intestate, leaving the plaintiff, her husband, and the defendants, her children, as her sole heirs at law. The plaintiff alleges that this conveyance to his wife was without consideration and upon her agreement to hold the property for the plaintiff and, upon his request, to convey it back to the plaintiff, or to his nominee. The plaintiff seeks to enforce this agreement as a constructive trust and asks to have the title to the premises restored to him.

The property was acquired by the plaintiff and his wife in 1921 by deed from Dora B. Luck. The purchase price was $4,100. The plaintiff with his own money paid $1,600. An existing mortgage of $2,500 was assumed by the grantees. It is apparent that the money paid down, and substantial sums which have since been expended upon the property, were earned and produced by the plaintiff in his milk business. The plaintiff says that the deed was taken jointly because " there is a custom in our country whenever a man owns anything they always try to get along together and that property they hold together."

The plaintiff testified that when the property was conveyed to his wife, Meri, she said she would hold it until he asked for it back, and such an agreement was quite definitely established by other witnesses, viz., Frank Pichlar and his wife, Mary, and Mr. Arthur Ruland, the attorney who had charge of the transaction, who testified that because the parties were foreigners, he asked Mrs. Bartos if she understood the arrangement and if it was all right and she replied in the affirmative. Furthermore, at the time the deeds were executed, the plaintiff executed a bill of sale of his business to his wife, Meri, with the same understanding. Later Mr. Bartos requested that the business be transferred back to him. Attorney Ruland prepared the papers and Mrs. Bartos in his

presence signed a bill of sale. In other words, she recognized and in part carried out the agreement alleged by the plaintiff. Mr. Bartos at all times used and controlled the real property and the business. Mrs. Bartos never objected or disclaimed the alleged agreement. In the language of the Court of Appeals (*Foreman* v. *Foreman*, 251 N. Y. 237, 241): " In its origin the trust was dependent for proof of its existence on nothing better than word of mouth. In the end, at her death, what was oral in its beginnings, had been confirmed by part performance, with the result that conduct as well as words had become the signs of its creation."

It is well settled that, notwithstanding the Statute of Frauds, an oral agreement to convey real property will be enforced by the adjudication of a constructive trust where otherwise a confidential relationship would be violated, or a fraud or injury result without redress. (*Foreman* v. *Foreman*, *supra*; *Sinclair* v. *Purdy*, 235 N. Y. 245; *Goldsmith* v. *Goldsmith*, 145 id. 313; *Kovner* v. *Kovner*, 134 Misc. 631; *Gallagher* v. *Gallagher*, 135 App. Div. 457; *Irving Trust Company* v. *Reikes*, 228 id. 510.) Under these authorities, we think the plaintiff is entitled to judgment unless prevented by the rule that one may not compel reconveyance of lands conveyed by him for the purpose of defrauding his creditors — with the intent to hinder, delay or defraud. (*Robertson* v. *Sayre*, 134 N. Y. 97.) The guardian *ad litem* and counsel for the defendants very ably urge that the conveyance to the plaintiff's wife was made by the plaintiff with such intent and purpose.

However, we incline to the view that the evidence falls short of establishing that brand of intent or purpose to defraud creditors which should prevent the plaintiff from recovering. (*Tiedemann* v. *Tiedemann*, 115 Misc. 462; affd., 201 App. Div. 614; affd., 236 N. Y. 534; *Buszozak* v. *Wolo*, 125 Misc. 546.)

What was his intent and purpose in making this transfer? This seems the vital question. Therefore, we detail the evidence at length.

The plaintiff is a foreigner. About twelve years ago he engaged in the milk business in his house. His wife had no property and for a number of years was a semi-invalid. The business was in the plaintiff's name. The real estate was rented. About nine years ago he purchased the real estate, taking the title, commendably, jointly with his wife. He paid down his apparent savings of $1,600. He has continuously improved the property and ultimately built a plant separate from the house but on the same lot. This was constructed and equipped in 1927–28 (after the conveyance to his wife in 1924) at an expense of over $20,000. He borrowed extensively, worked hard, paid regularly and now pays quarterly

and semi-annually on mortgages — a typical example of a man of little education, who by consistent hard work, saving and thrift, has developed a small business into a substantial business, aided no doubt, by the labor and assistance of his wife, although she had at no time any individual property outside of that connected with the business. Since the death of his wife their children have continued to reside with him; all but the youngest being in school. After a time he married again, his second wife being his first wife's cousin. She had an adopted child and the plaintiff is providing for his own children, his present wife and her adopted child.

There came a time when the plaintiff needed a pasteurizer. He contracted with the Creamery Package Company for one to cost $1,500. Then he was approached by one Van Nurman and induced to purchase one for $800 upon Van Nurman's promise (as plaintiff claims) to dispose of the Creamery Package Company's machine if they compelled the plaintiff to take it. The Van Nurman machine was installed and paid for. It did not do the work satisfactory to the requirements of the health department of the city of Binghamton. Then the Creamery Package Company appeared and there was a consultation between their representative, the plaintiff and his attorney. This company never sued or threatened suit, but agreed to wait and did wait until the settlement of plaintiff's differences with the Van Nurman Company, whom the plaintiff sued. After one disagreement, a settlement was reached by which that company's machine was returned. Thereupon the plaintiff took the Creamery Package Company's machine and paid for it. No judgment was ever entered against him; he was never sued.

The plaintiff had two other minor business troubles, to which defendants call attention as a basis for their argument that the plaintiff was attempting to delay and defraud his creditors. He bought a gas engine. It did not serve its intended purpose. After some negotiation it was taken back and apparently the plaintiff paid something like forty-seven dollars. Some trouble with the Binghamton health department grew out of his attempt to use the Van Nurman pasteurizer. When this was discarded, he had no further trouble and was never fined.

Attention is also called to a fine levied by the State Department of Agriculture. This, however, happened in 1928, three or four years after the conveyance to the plaintiff's wife. Instead of being a cause of the conveyance to the plaintiff's wife, it was the reason for the reconveyance of the business by her to the plaintiff. Upon this reconveyance, the matter was straightened out and the fine revoked.

It does not appear that the defendant was insolvent when he

made the transfer. If his real property and equipment were figured at what they were worth to him in a going business, he was solvent. His wife, to whom he transferred the property, was apparently then obligated on the existing bonds, mortgages and notes and continued to be; she became an obligor on the indebtedness thereafter created, including the indebtedness for the new plant and equipment, the major part of the plaintiff's liabilities. After the transfer, he continued to possess, control and manage the business (though in his wife's name), paid all the interest and taxes and seems to have satisfactorily met all his obligations.

As we view it, plaintiff's intent and purpose was not to evade the payment of his just debts but rather to conserve his assets — not to defraud, but to work his way out and protect not only himself, but his just creditors. This plan he has in part and still is carrying out. He had paid the Van Nurman Company; he paid the Creamery Package Company; he has paid and is still paying the banks and his other creditors, none of whom are complaining. It may be true that creditors are not the only ones who can urge fraud in such a transfer, but the fact that no rights of creditors are involved is considered in *Buszozak* v. *Wolo* (*supra*, 555). He evidences no intention of laying down and letting his creditors look out for themselves, but rather an intent to ward off an unjust claim and to work his way out and pay his just claims. He was apparently moved by an ungrounded fear, some hazy notion of impending business peril, based upon an exaggerated idea of his difficulties, rather than by such intent to delay and defraud as should bar him from obtaining equitable relief.

We think the equities are with the plaintiff and that under the authorities cited he is entitled to judgment. It is true that in the *Tiedemann* case the plaintiff had no admittedly just creditors. Nevertheless, Tiedemann was influenced to transfer his property by his fear of the results of a claim which he considered unjust, while in the case at bar the plaintiff was really induced to make this transfer by his fear of the outcome of certain litigation, of certain demands, which he considered unjust. Neither party conceded responsibility for the claims which really induced the transfer. Each feared the result of an unjust claim. The possibilities of an unfavorable result as to the negligence claim faced by Tiedemann were as good as the possibilities of an unfavorable result in the claims which the plaintiff here was resisting. As said by the Appellate Division in the *Tiedemann Case* (*supra*, 618): " If he feared a lawsuit, I see no justification on the evidence for the inference that he was endeavoring to defraud any one." While the plaintiff had other debts, as a man developing a business naturally

has, the claim which really actuated him was the Van Nurman claim which he resisted with at least some success.

In *Robertson* v. *Sayre* (134 N. Y. 97) and *Simis* v. *Simis* (146 App. Div. 655), cited by defendants, there was almost a conceded purpose to defraud and delay the creditors; in the *Simis* case no agreement to reconvey was found to exist. Apparently all the claims against the grantor were concededly just and there was an entire absence of the element of the fear of the outcome of an unjust claim.

The business itself was reconveyed by the plaintiff's wife in her lifetime. Were she still alive and the plaintiff so desired, the real estate would undoubtedly be reconveyed. Of course, the fact that she might voluntarily carry out an agreement which the plaintiff could not enforce is not controlling.

It seems inequitable that this plaintiff, an industrious foreigner, who both before the transfer and since, has built up a substantial business, should be deprived of the ownership and control of his property, under the circumstances of this case.

I hold that the plaintiff's wife made the agreement to reconvey and that the plaintiff is entitled to be vested with the title to the real property. Findings may be prepared accordingly. The parties may be heard, if desired, on the form of the judgment to be entered. Apparently it should be for the specific performance of the agreement to reconvey.

At the same time, the guardian *ad litem's* allowance will be considered. He has very properly given thorough and able consideration to the defendants' case and should be compensated therefor. (Rules Civ. Prac. rule 43.)