ELVIRA SINCLAIR, Plaintiff, *v.* LYDIA M. PURDY, Individually and as Administratrix of the Estate of ELIJAH F. PURDY, Deceased, JENNIE A. MAPES, Appellant, and EDWIN G. CORBY et al., as Executors of ELVIRA PURDY, Deceased et al., Respondents.

**Real property — implied trust — transfer of interest in property by brother to his sister, in order that the title, to outward appearance, be vested in her — when such property transferred in confidence and in reliance upon the honor of his sister charged with a trust for the grantor — evidence — erroneous exclusion of letter from sister to her brother containing admissions that he was a half owner of the property — when question whether there was a trust, one for the jury.**

1. The owner of an undivided one-seventh interest in real estate conveyed his interest in the property to a sister who had a similar interest. The relation between the brother and sister was harmonious and there were repeated declarations by her that, though the title was in her name, a half interest in the lots was his. Afterward, the brother went to live

## 246      SINCLAIR v. PURDY.

with a niece and an arrangement was made that in return for her care during the rest of his life, he would devise to her his interest in the houses and lots of which his sister had the title. Some years later the brother died leaving a will but giving nothing to his niece. In this action brought to partition the property, the niece has set up a counterclaim asking judgment establishing a trust in favor of the brother to the extent of an undivided one-half of the property, and specific performance of his contract to devise his half to her. Upon a separate trial of the issues framed by the court, the jury found by the consent of all parties that an agreement had been made between the brother and his niece to the effect that in consideration of her care of him, she would receive upon his death his interest in the land in suit. It found, also, performance of the agreement on her part and fixed the value of her services, but found, under the direction of the court, that the brother had in fact no interest legal or equitable to devise; that the sister was the sole owner; and that she had not estopped herself either by representations or otherwise to the niece or otherwise from the assertion of her ownership. Upon the trial the niece offered in evidence a letter signed by the sister and written to her brother, admitting that he was as much interested in the property as herself and that she would not lease it without seeing and talking with him first. This letter was erroneously excluded because, read in the light of the existing situation, it might have been interpreted as a note or memorandum of trust sufficient to satisfy the requirement of the statute (Real Prop. Law, § 242; Cons. Laws, ch. 50). The sister's letter is not inadequate as a memorandum because, while referring to the " houses," it does not otherwise describe them; the record justified the inference that the houses in controversy were the only ones she ever owned and she left no other real estate at the time of her death. The letter should have been received, and its interpretation left to the jury in the light of the surroundings.

2. Even if the memorandum were found inadequate, a question would still remain and would call for an answer by the jury, whether there had been such an abuse of a confidential relation as to lead, without a writing, to the implication of a trust. A confidential relation was the procuring cause of the conveyance. The grantor could not disclose the trust upon the face of the deed. If he had done so, he would have defeated the purpose of the transfer, which was to escape importunities to go bail for defendants in the court of which he was the clerk, which required that title, to outward appearance, be vested in another. He found, as he thought, in the bond of kinship a protection as potent as any that could be assured to him by covenants of title. In such condition equity will grant relief.

3. A contention that the transfer was intended as a gift, and that it created a title unaffected by a trust is not supported by such evidence as to prevent a jury from drawing another inference.'

4. A contention that the contract between the brother and his niece, who took care of him, is void under the Statute of Frauds is irrelevant, since the provisions of the statute, in their application to that contract are not pleaded, but so far as the action involves the declaration of a trust relation between the brother and his sister the defense of the statute is presented by the answer.

*Sinclair* v. *Purdy,* 202 App. Div. 797, reversed.

(Submitted February 2, 1923; decided March 6, 1923.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 3, 1922, which affirmed a judgment of Special Term dismissing upon the merits the counterclaim of the defendant Mapes and excluding her from any interest in the real property to be partitioned in this action.

*George B. Ackerly* for appellant. As the Statute of Frauds was not pleaded the defendants cannot take advantage of it. A court of equity will not permit the Statute of Frauds to be used as an instrument of fraud. (*Matthews* v. *Matthews,* 154 N. Y. 288; *Woods* v. *Rabe,* 96 N. Y. 414; *Gallagher* v. *Gallagher,* 135 App. Div. 457, 202 N. Y. 572; *Ryan* v. *Dox,* 34 N. Y. 307; *McClellan* v. *Grant,* 83 App. Div. 579; 181 N. Y. 581; *Niver* v. *Crane,* 98 N. Y. 40; *Reitz* v. *Reitz,* 80 N. Y. 538; *Kline* v. *Mc-Donnell,* 62 N. Y. 177; *Carr* v. *Carr,* 52 N. Y. 251; *Robbins* v. *Robbins,* 89 N. Y. 257.) Elvira and those claiming under her or Elijah are estopped from claiming title to Elijah's half interest in the property. (*Rector* v. *Tweed,* 120 N. Y. 534; *Crook* v. *Scott,* 65 App. Div. 139; *Jackson* v. *Nicoll,* 23 App. Div. 139; *Trustees, etc.,* v. *Smith,* 116 N. Y. 641; *Rothschild* v. *T. G. & Trust Co.,* 204 N. Y. 464; *Giles & Co.* v. *K. W., etc., Co.,* 233 N. Y. 470; *Thompson* v. *Simpson,* 128 N. Y. 270; *Ackerman* v. *Irene,* 175 App. Div. 362; *Matter of Franckel,* 157 N. Y. 609; *Goldsmith* v.

*Goldsmith,* 145 N. Y. 313; *Melenky* v. *Melen,* 233 N. Y. 19.)

*George H. Corey* for respondents. Elijah F. Purdy never at any time subsequent to 1870 had any right, title or interest in the property located on Twenty-third street or in any part thereof. (*Hutchins* v. *Van Vechten,* 140 N. Y. 115; *Cook* v. *Barr,* 44 N. Y. 156.) Elvira Purdy's heirs and devisees are not estopped from asserting and claiming title. (*Gall* v. *Gall,* 64 Hun, 600; *Hamlin* v. *Stevens,* 177 N. Y. 39; *Rosseau* v. *Rouse,* 180 N. Y. 116.)

CARDOZO, J. The action is partition. Elijah F. Purdy succeeded upon his father's death in or about 1868 to the ownership of an undivided seventh interest in real estate in the city of New York. An equal interest passed to his sister Elvira, and like interests to other brothers and sisters, whose rights are not involved. Elijah was a clerk of what was then known as the Fifth District Court. His ownership of real estate subjected him to constant importunities to go bail for those in trouble. The desire to escape these importunities led him to execute a deed conveying his undivided half interest to his sister Elvira. The conveyance was made during the pendency of an action for the partition of the estate. The judgment in that action, dated February 21, 1871, directed a sale of the property and the payment to Elvira of two-sevenths of the proceeds. By arrangement with Elijah, she bought in two parcels, 337 and 339 East Twenty-third street, paying the purchase price by offsetting it against her share in the proceeds of partition, for she had not a dollar besides. The record does not make it plain whether at this time brother and sister made their home together. The relation between them in any event was one of harmony and affection, and so continued till the end. Advancing years brought illness

and infirmity to the man, and the need of unremitting care. To procure the comforts of a home, he went to live in 1898 with Mrs. Mapes, a niece. An arrangement was made that in return for her care during the rest of his life, he would devise to her his interest in the Twenty-third street property. There is evidence of repeated declarations by Elvira that though the title was in her name, a half interest was his. A letter confirmatory of his rights, to which there will be fuller reference later, was excluded upon the trial. Elijah died at the age of eighty in 1914. He left a will, but gave nothing to his niece. Elvira died in 1917. In this action, brought to partition the Twenty-third street parcels, the niece, Mrs. Mapes, has set up an equitable counterclaim. She asks the judgment of the court establishing a trust in favor of Elijah to the extent of an undivided half, and specific performance of his contract to devise his half to her.

There was a separate trial of the counterclaim upon issues framed by the court for determination by a jury. The jury found by consent of all parties that an agreement had been made between Elijah Purdy and Mrs. Mapes to the effect that in consideration of her care of him, she would receive upon his death his interest in the land in suit. It found performance of the agreement on her part, and fixed the value of her services at $12,000. It found, however, under the direction of the court that Elijah had in fact no interest, legal or equitable, to devise; that Elvira was the sole owner; and that she had not estopped herself either by representations to Mrs. Mapes or otherwise from the assertion of her ownership. The judgment entered upon this verdict was a final adjudication adverse to the appellant's title (*Brown* v. *Feek*, 204 N. Y. 238; *Albany Hospital* v. *Albany Guardian Society*, 214 N. Y. 435). The Appellate Division affirmed. An appeal to this court followed.

We think the letter of February 20, 1903, was

erroneously excluded. Read in the light of the existing
situation, it might have been interpreted as a note or
memorandum of a trust, sufficient to satisfy the require-
ments of the statute (Real Prop. Law, § 242; Consol.
Laws, ch. 50). The letter, signed by Elvira and written
to her brother, contains, with other things, the following:
" Now I want you to fully understand that I would not
sign a lease or give a two years privilege to ' Mr. Foxey '
without seeing and talking to you first — not much —
no siree — why should I? Are you not as much interested
in the houses as myself — surely yes — so ' put that
in your pipe and smoke it,' old chap. Weather is horrid,
and while it lasts, won't go to 23d Street." We held in
*Hutchins* v. *Van Vechten* (140 N. Y. 115) that a sufficient
memorandum of a trust was to be found in a letter to
the effect that anything realized from a sale belonged
equally to the writer and to another whom he named.
We find little difference in principle between that case
and the one at bar. Elvira's statement that her brother
had as much interest in the houses as herself might
fairly be interpreted by the triers of the facts as an
admission that her title was subject to a trust. No doubt
the recognition of the trust must be found in the writing,
and not elsewhere. The ordinary aids to interpretation,
however, are not to be ignored; and probabilities of cir-
cumstance and occasion may point or clarify a meaning
that might otherwise be doubtful (*Marks* v. *Cowdin*,
226 N. Y. 138). This woman had received a deed of
her brother's interest in the land for which she had
paid nothing. She had received it because he wished
to put the title in a form where his ownership would be
secret. That appears from her own testimony upon
an examination before trial. If from such a conveyance
without more a trust did not arise, at least the situation
was one in which the recognition of a trust became
natural and probable. In Elvira's own words, Elijah
trusted to her sense of honor. That is the background

which gives to the figures in the foreground their position and perspective. We must read the letter in its setting. Thus viewed, its assertion of equality of interest becomes something more than a tribute to brotherly affection. It is the recognition of a right, and the declaration of a duty.

We are told, however, that the sister's memorandum is inadequate because while referring to the " houses," it does not otherwise describe them. The record justifies the inference that the houses in controversy were the only ones she owned. She bought them at a time when according to her testimony she had not another dollar in the world. She left no other real estate at her death, as appears by necessary inference from the admissions in the pleadings. She constantly referred to these houses in conversation with her brother, and never, so far as appears, suggested that he had an interest in any others. A witness does, indeed, say that he heard of her owning property at Washington Place — from whom he heard it does not appear — but he admits in the next breath that he had no knowledge on the subject. If such property was owned, and sold before her death, the evidence of the sale could readily have been supplied by those who claimed under her will. Opportunity to prove or to disprove is to be weighed by the triers of the facts in determining the significance of the evidence before them (*Matter of Jordan* v. *Decorative Co.*, 230 N. Y. 522, 527). The conclusion that she had nothing else is borne out by other circumstances. A sale would have augumented her personal estate, yet the only personal estate at the time of her death was a trifling balance of $212.54 in the savings bank. These facts, viewed in their collective significance, supply at least some basis for a finding that at the date of the letter she was the owner of these houses and no others.

In such conditions, a description that might otherwise be indefinite becomes definite and adequate when applied

to the only subject-matter that can reasonably fit it. A leading case is *Plant* v. *Bourne* (1897, 2 Ch. 281). There the description was "24 acres of land freehold, in the parish of Draycott in the County of Stafford." The question was whether there was sufficient identification of the subject-matter of the sale. The court held that the vendor was presumably selling his own 24 acres and not another's, and that the description was sufficient to let in extrinsic evidence that he had only 24 acres in the county. "The general rule is, *Id certum est quod certum reddi potest,* and I am of opinion that this maxim applies here" (Lindley, J., in *Plant* v. *Bourne, supra*). Many other cases, both in England and in our own country, enforce the same distinction. The description will be rejected as inadequate if the signer is the owner of two or more parcels, to any one of which it may be applied with equal fitness. It will be accepted as sufficient if he is the owner of only one (*Shardlow* v. *Cotterell*, 20 Ch. D. 90; *Auerbach* v. *Nelson*, 1919, 2 Ch. 383; *Doherty* v. *Hill*, 144 Mass. 465, 467; *Harrigan* v. *Dodge*, 200 Mass. 358; *Hampe* v. *Sage*, 82 Kan. 728, 733; *Quinn* v. *Champagne*, 38 Minn. 322; *Gilbert* v. *Tremblay*, 79 N. H. 431; *Preble* v. *Higgins*, 43 R. I. 10; *Waring* v. *Ayres*, 40 N. Y. 357; cf. *Marks* v. *Cowdin*, 226 N. Y. 138, 144). All that we need to do is to lay the contract alongside the fact, and the result is ascertained (Chitty, J., in *Plant* v. *Bourne, supra*).

We hold, therefore, that the letter should have been received, and that its interpretation was for the jury in the light of the surroundings (*Lamb* v. *Norcross Bros. Co.*, 208 N. Y. 427; *Utica City Nat. Bank* v. *Gunn*, 222 N. Y. 204, 208). But even if the memorandum were found to be inadequate, a question would still remain, and would call for answer by the jury, whether there had been such an abuse of a confidential relation as to lead without a writing to the implication of a trust. The sister's deposition shows that her brother disclosed

his plan to her before the making of the deed. Some one, he said, had advised him to place his share of the property in her name. He told her that he intended to follow the advice. It was an expedient adopted to save him the bother of going upon bonds. She does not remember that she made any promise in return. He trusted, as she puts it, to her sense of honor. A little later she learned that the title was in her name.

We think a confidential relation was the procuring cause of the conveyance. The grantor could not disclose the trust upon the face of the deed. If he had done so, he would have defeated the purpose of the transfer, which required that title, to outward appearance, be vested in another. He found, as he thought, in the bond of kinship a protection as potent as any that could be assured to him by covenants of title. It was " the case of a confidence induced, not by the bare promise of another, but by the promise and the confidential relation conjoined " · (*Wood* v. *Rabe*, 96 N. Y. 414, 426). " The absence of a formal writing grew out of that very confidence and trust, and was occasioned by it " (*Goldsmith* v. *Goldsmith*, 145 N. Y. 313, 318.) In such conditions, the rule in this state is settled that equity will grant relief (*Wood* v. *Rabe, supra; Goldsmith* v. *Goldsmith, supra; Gallagher* v. *Gallagher*, 135 App. Div. 457; 202 N. Y. 572; *Allen* v. *Arkenburgh,* 2 App. Div. 458; 158 N. Y. 697). Distinctions are, indeed, to be drawn between cases where property is parted with on the faith of an oral promise, and cases where one without an interest in property before obtains a promise that an interest will be given to him thereafter (*Leary* v. *Corvin*, 181 N. Y. 222, 229; cf. *Amherst College* v. *Ritch*, 151 N. Y. 282). It is not the promise only, nor the breach only, but unjust enrichment under cover of the relation of confidence, which puts the court in motion.

The argument is made that the transfer was intended as a gift. True it is, we are told, that the motive of the

grantor was to avoid the embarrassments incidental to notoriety of ownership. The purpose, none the less, was the creation of a title unaffected by a trust. We think a jury would be permitted to draw another inference. Here was a man transferring to his sister the only property he had in the world. He was transferring it in obedience to advice that embarrassment would be avoided if he put it in her name. He was doing this, as she admits, in reliance upon her honor. Even if we were to accept her statement that there was no distinct promise to hold it for his benefit, the exaction of such a promise, in view of the relation, might well have seemed to be superfluous. The proof of the conveyance, so far as it rests upon Elvira's testimony, was wrung from an unwilling witness. Though a promise in words was lacking, the whole transaction, it might be found, was " instinct with an obligation " imperfectly expressed (*Wood* v. *Duff-Gordon*, 222 N. Y. 88, 91). It was to be interpreted, not literally or irrespective of its setting, but sensibly and broadly with all its human implications. Even the denial of an express promise might not unfairly be discredited. There is evidence that in later years Elvira stated again and again that she and her brother were equal owners of the property. There are the significant admissions of the letter which have at least a corroborative value, if they serve no other purpose. When all these circumstances are viewed collectively, we think the triers of the facts might say that the conveyance from brother to sister was made as a form, that both so understood it, and that the transaction was consummated in confidence that the holder would keep the faith.

Some point is made as to the pleadings. So far as the contract between Elijah and Mrs. Mapes is concerned, the Statute of Frauds is irrelevant, since its provisions, in their application to that contract, are not pleaded. So far, however, as the action involves the declaration of a trust relation between Elijah Purdy and his sister,

we think the defense of the statute is presented by the answer.

The judgment of the Appellate Division and that of the Special Term should be reversed and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., HOGAN, POUND, MCLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgments reversed, etc.