HARRIET C. VICKERS, Plaintiff, *v.* EDWARD H. VICKERS and Others, Defendants.

Supreme Court, Niagara County, September 23, 1935.

*Frank S. Nicholson,* for the plaintiff.

*John B. McNulty,* guardian *ad litem,* for the infant defendants Raymond Vickers, William Vickers and Frances Vickers.

*Tuttle, Rice, Stockwell & Rice [Robert L. Rice* of counsel], for the defendant Edward H. Vickers.

CHARLES B. WHEELER, Official Referee. The plaintiff is the widow of Terry Vickers, deceased, who was the son of the defendant Edward H. Vickers. Raymond Vickers, William Vickers and Frances Vickers are the infant children of Terry Vickers, who died intestate in January, 1934. The land or premises in question consists of two lots known as lots 3 and 4, which adjoin each other.

Edward Vickers is the record owner of lot 4, having acquired title to it by deed dated December 18, 1925. Lot 3 immediately adjoins lot 4 on the south. By deed dated February 19, 1926, Terry Vickers and his wife, Harriet C. Vickers, acquired the record title to lot 3. Prior to March, 1926, there was a cheap dwelling house on lot 4 occupied as a residence by Edward H. Vickers, Terry Vickers and his wife, Harriet, with their children. They were all living there as one family. It seems to have been unsuited for a family of that size and talks were had about the erection of another house on the property, and it was decided to build such a house on lots 4 and 3. House plans were selected and the house built. In the construction of said house it was placed partly on lot 4 and partly on lot 3. The main part of the house was placed on lot 4, but it had a side entrance and the steps to the doorway were placed on No. 3. The house also had a *porte-cochere* and this was built upon and over lot 3. From the street there was a concrete driveway leading to a garage, and going under the *porte-cochere,* and this was built on lot 3, so that to use the dwelling it was necessary to use both lots 3 and 4.

Preliminary to the erection of the dwelling, the means or money necessary to pay for its construction was the subject of discussion between the defendant Edward H. Vickers, his son Terry and his wife, Harriet. It was then agreed that the parties named should share equally in its cost, but funds were needed and the parties applied to the Niagara Permanent Savings and Loan Association for a building loan to enable the erection of the house. The association granted a loan of $5,600, and all three parties, to wit, Edward H. Vickers, Terry Vickers and Harriet Vickers, thereupon executed a bond and mortgage to the association for said $5,600. This mortgage covered both lots 3 and 4. This $5,600 was used to pay the cost of the house, although not fully. By the terms of the bond and mortgage the mortgagors were required to make

monthly payments of $56 for interest and any excess over the interest charge was applied in reduction of the principal of the loan.

The testimony on behalf of the plaintiff is that the defendant Vickers and Terry and his wife were to pay one-half the cost of the erection and that said parties then should own as tenants in common all the property mortgaged, " fifty-fifty," although the defendant Edward H. Vickers denies the making of any such agreement. In any event, the evidence is that these parties did, after the giving of the mortgage, each pay the mortgagee one-half of said monthly payments, that is, Edward H. Vickers paid twenty-eight dollars per month and Terry the other twenty-eight. This was done for some time until the payments so made reduced the amount due on principal and a reduction in the monthly payments was arranged, when payments of one-half each were continued as before.

The testimony is that at the time of the trial there remained due on said bond and mortgage the sum of $2,785.95, showing a substantial reduction in its amount. Subsequent to the giving of the $5,600 mortgage, the parties gave a second mortgage for $1,000 on the premises to the Manufacturers and Employees Mortgage Corporation, which money so obtained was also used in the construction of the house and garage.

It is claimed that Terry Vickers also paid the contractor, Homer Brown, $265 on August 24, 1926, and the electrician $105, and $408.18 for a furnace.

All these things it is claimed were done under and pursuant to the oral agreement that the entire property should belong to the parties equally, or as expressed, " fifty-fifty." However, no written agreement to that effect was ever executed by the parties.

After the death of Terry Vickers in January, 1934, the plaintiff and her children continued to live in the house in question until November of that year when the defendant Edward H. Vickers took proceedings in the City Court to oust them as tenants. Whereupon this action was begun and an injunction obtained restraining the prosecution of said proceeding until the determination of this action.

The defendant Edward H. Vickers denies the making of the oral agreement alleged, and the first question presented for determination is whether or not such an agreement was in fact made.

The referee finds that the oral agreement alleged was in fact made substantially as claimed. We are unable to reconcile the conduct of the parties with a contrary conclusion.

Lots 4 and 3 were both devoted to the erection of the house and the making of a home. While the house was in the main erected on lot 4, nevertheless, the *porte-cochere* was built on lot 3, and in its connection a concrete driveway necessary to the use of the house

was on lot 3, and the use of both lots devoted to the dwelling. The bond and mortgage given to raise the necessary money to pay for the erection of the house covered both lots, and was given by the plaintiff, her husband and the defendant. It was their joint obligation, and the payments of interest and principal were made equally by the plaintiff and her husband and the defendant.

The insurance policies on the house insured both the plaintiff and her husband and the defendant. Terry Vickers in addition paid for certain other things which went into the construction of the house. All these things go to show the recognition of a joint or common ownership in the property and are acts inconsistent with any other theory.

This view is confirmed by the testimony of the witness Leslie House that when the house was under construction he called on the defendant and his son Terry with the view of getting an order to install a certain furnace, and in the course of the talk the defendant said, " Terry wanted hot water and I wanted hot air. You know it is Terry's and mine and it will be only a matter of a little time when it will be all Terry's. He should have what he wants," and on a later occasion the defendant said, " You know the property is Terry's and mine."

Terry Vickers and his wife and children and the defendant, after the erection of the house, lived in it as one family until after the death of Terry. The defendant contends that the half of the money paid for principal and interest on the loan association mortgage was for and in lieu of rent, but in fact these moneys were paid for interest and in reduction of the principal, and later, as the amount of principal was reduced, the monthly payments were reduced, all of which militates against this claim made by the defendant.

The referee is, therefore, forced to find the oral agreement alleged and testified to was in fact made.

The case as presented then comes down to this, that we have simply an oral agreement for the joint or common ownership of the property under the circumstances stated, without any agreement in writing between the parties to establish their respective claims. Under such facts is the plaintiff entitled to maintain this action?

The defendant insists the plaintiff cannot recover, and in his answer to the complaint pleads the provisions of section 242 of the Real Property Law reading as follows: " When written conveyance necessary. An estate or interest in real property, other than a lease for a term not exceeding one year, or any trust or power, over or concerning real property, or in any manner relating thereto, can not be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by

a deed or conveyance in writing, subscribed by the person creating, granting, assigning, surrendering or declaring the same, or by his lawful agent, thereunto authorized by writing. But this section does not affect the power of a testator in the disposition of his real property by will; nor prevent any trust from arising or being extinguished by implication or operation of law, nor any declaration of trust from being proved by a writing subscribed by the person declaring the same."

However, it is held that in a court of equity the Statute of Frauds may not be used to perpetrate a fraud. (*Monica Realty Corporation* v. *Bleecker*, 229 App. Div. 184; *Foreman* v. *Foreman*, 251 N. Y. 237.)

In the above case of *Foreman* v. *Foreman*, the court, in its opinion, said: " The rule is now settled by repeated judgments of this court that the statute does not obstruct the recognition of a constructive trust affecting an interest in land where a confidential relation would be abused if there were repudiation, without redress, of a trust orally declared," citing *Sinclair* v. *Purdy* (235 N. Y. 245, 253); *Gallagher* v. *Gallagher* (135 App. Div. 457; 202 N. Y. 572); *Leary* v. *Corvin* (181 id. 222, 229); *Goldsmith* v. *Goldsmith* (145 id. 313); *Wood* v. *Rabe* (96 id. 414).

The statute quoted constituting no bar to a proper action, the question remains whether the evidence makes out a proper case for relief. We are of the opinion it does.

The defendant, his son Terry, and Terry's wife, the plaintiff, occupied toward each other a confidential relation. Each reposed confidence in the other and acted accordingly. It would be tantamount to a fraud on the part of defendant not to recognize and carry out the oral arrangement made and existing between them, and a refusal so to do gives the right to equitable relief. We think the following cases fully sustain that right: *McKinley* v. *Hessen* (202 N. Y. 24); *Thomas* v. *Robbert* (123 Misc. 76); *Wood* v. *Rabe* (96 N. Y. 414); *Goldsmith* v. *Goldsmith* (145 id. 313); *Gallagher* v. *Gallagher* (135 App. Div. 457).

The defendant contends that this action is for a partition, and sale of the property in question cannot be had, and cites in support of the contention the case of *McKenna* v. *Meehan* (248 N. Y. 206). The decision construes section 1018 of the Civil Practice Act as applied to oral declaration of trust in lands. As we read the decision, it simply holds that until the trust is established by judgment, an action for partition will not lie. The opinion, however, clearly indicates that an action to establish ownership in equity will lie, although a partition cannot be had until such ownership has been established by judgment.

In the present case the complaint alleges facts entitling the plaintiff to the relief sought, and asks for a judgment establishing ownership.

The complaint, however, also incorporates a prayer that the sale of the property be had because as so situated it is incapable of division.

To that extent, so far as relief is asked, the complaint doubtless goes too far under the decision in *Mc Kenna* v. *Meehan.* The fact, however, that the complaint asks as relief more than the plaintiff is entitled to does not in our judgment impair the right to a judgment establishing the rights of the parties in the land in question.

The prayer for partition by sale may be regarded as surplusage.

The judgment rendered may establish the interest of the parties and, when finally fixed, leave it to a subsequent and separate action for partition and sale.

Having reached the conclusion stated so far in this opinion, it remains to find just what are the respective interests in the property in question. It is our opinion, and we find, that Terry Vickers and his wife, the plaintiff, became the equitable owners of one-half and the defendant the owner of the other one-half, as tenants in common. They each contributed one-half. Terry Vickers and his wife contributed lot 3 and one-half the cost of the erection of the house, and one-half the carrying charges. The defendant contributed lot 4 and the other half of the carrying charges. They were contributors one-half each. We, therefore, construe the oral agreement that they were to hold on the basis of " fifty-fifty " and to have equitable ownership as stated.

However, lot 3 was conveyed to Terry Vickers and wife. This created an estate by the entirety in the grantees, and ordinarily the survivor would take the entire interest. Terry died intestate in January, 1934. Did his wife thereby take as survivor the entire interest in lot No. 3?

We are of the opinion she did not, but that by virtue of the oral agreement sought to be enforced the right to hold an estate by the entirety was waived and destroyed the same as though a deed of conveyance had been executed by them. We must not overlook the fact that this action is one to enforce the oral agreement the same as though it had been carried out by proper written instruments at the time it was made. As a result, the defendant became the owner of one-half the property in question and Terry Vickers and this plaintiff of one-quarter each, and on Terry Vickers' death intestate his one-fourth interest passed to his three children, one-third of said fourth to each. As the widow of Terry, it would seem she was and is entitled to a dower interest in the share going to the children.

All these respective interests of the parties, however, are subject to the liens and incumbrances of the mortgages assigned to the plaintiff, and the judgment or decree to be entered should so provide.

Findings and a judgment or decree may be prepared in accordance with the views above expressed, with costs of this action in favor of the plaintiff against the defendant. The allowance for fees to the guardian *ad litem* for the infant defendants, we are of the opinion, should be fixed by this court on proper application at Special Term.

It also follows that the injunction heretofore granted staying proceedings in the City Court should be continued.

So ordered.