In the Matter of the Estate of ESTHER KOVIT, Deceased.

Surrogate's Court, Bronx County, December 17, 1948.

*Frederick Katz* for Abraham Kovit, petitioner.

*Henry K. Chapman* for Benjamin Neuwirth, as executor of Esther Kovit, deceased.

*Shirley Kahn,* special guardian for Sylvia Neuwirth and others, infants.

*Samuel Silverman* for Ruth Klewans and another.

*Hartman & Craven* for Israel Orphan Asylum.

*Cadwalader, Wickersham & Taft* for the Salvation Army.

HENDERSON, S. The surviving husband of the decedent seeks a direction to the executor to turn over to him certain personal

property, the greater part of which represents his earnings during the period of their marriage. They were married on June 9, 1929 and the decedent died on February 14, 1948. During all this time the decedent had no gainful employment. The petitioner was employed during all of that time by the same concern. There were no children.

The decedent by her will, after certain specific bequests of jewelry, left the residue in trust for her husband for life. Half of the remainder was given to charities and the balance to her blood relatives.

The petitioner can neither read nor write except to sign his name. All his pay envelopes were turned over to the decedent unopened, and she kept a written memorandum of the amounts received.

They appeared to be happily married and the evidence indicates that their personal relations were always harmonious. They had a small circle of married friends with whom they maintained intimate personal relations. This group met frequently in each other's homes, where the men played poker for small stakes and the women played other card games in which little money changed hands. On several occasions they went on short vacations with their friends.

A number of these persons, husbands and wives, testified for the petitioner. Their testimony was to the effect that the decedent handled all the money. The petitioner was unable to give his share when collections for charity or other purposes were made at his place of employment without going to his wife for the money. If he lost as little as one or two dollars at the poker games, he asked his wife for the money with which to pay his loss. When they ate at a restaurant, the decedent gave the petitioner the money with which to pay the check. They spent little on clothing and on occasion when they went out of town with friends on a similar economic level, the decedent insisted that they could not afford as desirable accommodations as the others. The decedent controlled every family expenditure.

The decedent discussed the family finances at various times with the individuals who composed the group above described. This came about because all the members of the group disapproved of the fact that the petitioner requested money from his wife before other people to make his small personal expenditures. They also believed that the decedent was too penurious in her manner of living. Over the years there were numerous discussions between the decedent and her friends when they

remonstrated with her. On all of these occasions the decedent told all these persons in substance that she was saving the money for her husband so that they would not be in want in their old age.

The uncontradicted testimony of these disinterested witnesses that the decedent stated on numerous occasions that she was saving her husband's money for him can lead only to the conclusion that such was the fact. The only inference that can be drawn from the evidence is that there was an understanding between the petitioner and the decedent that she was saving his money for him.

The conduct of the decedent in attempting to dispose of the petitioner's property by will as if it were her own was a breach of the trust and confidence which he reposed in her and a fraud upon him. A court of equity will require her legatees to give up what belongs to him (*Foreman* v. *Foreman*, 251 N. Y. 237; *Sinclair* v. *Purdy*, 235 N. Y. 245; *Matter of Weiman*, 240 App. Div. 829, affd. 264 N. Y. 696).

The next consideration is to determine the amount belonging to the petitioner which has come into the hands of the executor. As the decedent was not gainfully employed, this is not a difficult task. On June 9, 1929, the date of the marriage, the decedent had $460 on deposit in a savings bank.

The executor, her brother, testified that she received the following payments from her mother's estate:

| | |
|---|---|
| $82.17 | June 1, 1935 |
| 109.44 | December 1, 1938 |
| 227.80 | December 7, 1938 |
| 148.87 | September 8, 1939 |
| 25.00 | September 8, 1939 |
| 90.00 | September 8, 1939. |

The last two items were dividend payments from four shares of Pennsylvania R. R. Co. and one share of American Tel. & Tel. Co.

She also received $1,000 on August 1, 1939, the proceeds of a Home Owners Loan Bond.

Before the decedent's marriage, she invested $7,000 in a mortgage certificate. This certificate was in the joint names of the petitioner and the decedent. The petitioner has received the certificate representing the balance due on this investment. Between the date of the marriage and the decedent's demise, there was paid on account of principal and interest, the sum of $7,514.53. Of this sum the decedent should be credited with half, $3,757.27.

There are four shares of Pennsylvania R. R. stock and one share of American Tel. & Tel. to which the petitioner makes no claim.

The above sums of money which belonged to the decedent were mingled with the petitioner's money. Interest has been earned on decedent's personal funds which is included in the sum of which she was possessed at her death. It would be impossible to determine exactly how much interest was earned. The dates when this money was received by the decedent have been set forth above except as to the dates of the receipt of principal and interest on the mortgage certificate. These dates are in the record and it would serve no purpose to tabulate them here. The court determines that a fair allowance for interest is 2%. Interest is to be figured on January 1st and July 1st of each year and compounded semi-annually. The jewelry, the five shares of stock above enumerated and the amounts set forth above with interest computed as directed, constitutes the decedent's estate. The executor will be directed to turn over the balance to the petitioner. The parties are directed to make the interest computations for submission to the court.

Settle decree.