Chief Judge Breitel.
Plaintiff Doreen McGrath, a wife of three months of defendant Hilding, having divorced him, and then evidently having remarried her former husband Mc-Grath, sought equitable relief against Hilding based on a constructive trust. Relying on an oral premarital promise by Hilding to give her a tenancy by the entirety in the home owned by him, she contributed money to construct an extension with two additional bedrooms to accommodate her children by the former marriage. In lieu of the half interest in the property, if that were not available, she sought equitable relief either for half the value of the home or, at least, for the money she advanced.
Supreme Court, after trial, held that Hilding had been *627 unjustly enriched, and granted plaintiff judgment for $3,950, the money the court found that she had advanced. From a divided affirmance at the Appellate Division, Hilding appeals.
The issue is whether a court of equity, called upon to remedy enrichment allegedly gained unjustly from abuse of a confidential relationship, may grant relief without regard to or examination of the conduct of plaintiff affecting the transaction from which the alleged unjust enrichment arose.
There should be a reversal and a new trial. The powers of a court of equity are not so circumscribed that the inequitable conduct of one who invokes its relief may escape its scrutiny and evaluation. From the unduly restricted and sparse record made at trial it is unclear whether Hilding was indeed unjustly enriched. Plaintiff’s proof, accepted by the trial court and affirmed by the Appellate Division, does show that Hilding failed to convey, as he had orally promised, half his interest in his home in exchange for his new wife’s contribution. But those facts do not conclude the matter. Repeatedly rejecting, as collateral, proof that plaintiff may have grievously breached the marital relationship, the trial court abrogated its responsibility to view the transaction realistically in its human setting, and, as a result, awarded equitable relief on too naked a record.
A widower with four children, Hilding met plaintiff in February, 1971. At the time, she was living apart from her then husband, McGrath, pursuant to a separation agreement. By summer, although plaintiff was not yet divorced from McGrath, she and Hilding became engaged. The new couple set a wedding date and discussed living arrangements. Hilding testified that, while he would have "preferred to wait until 1972”, to accommodate plaintiff’s desire to have the two families together by Christmas he suggested they move into his house. Plaintiff, however, was hesitant to occupy the bedroom her new husband had shared with his former wife and was also concerned about adequate sleeping arrangements for the two of her three children who were in her custody. It was finally decided that the couple would build an extension to Hilding’s house.
In September, 1971, plaintiff and McGrath were divorced. In late October or early November, she received $8,900 of the proceeds from the sale of the McGrath home, jointly owned by the McGrath couple.
The addition to the Hilding home cost $7,900, half paid by *628 plaintiff. It is an affirmed finding of fact, not reviewable by this court, that plaintiff’s contribution was in reliance on Hilding’s promise "to put her name” on the deed to his home. The contractor completed his work before November 27, the day the Hilding-McGrath couple were married.
After a one-week honeymoon, plaintiff and two of her children, as planned, came to live with defendant. The marriage was ill-fated. There is testimony that by early January the couple had already discussed divorce. Prompted by an argument at home some time around January 8, plaintiff met her ex-husband McGrath at a restaurant and went, with her children, to stay overnight in his apartment. She returned to Hilding the next morning. In short order Hilding found himself alone again when his wife went to Florida for a week. On February 6 plaintiff left Hilding for the last time, and the two obtained a quick divorce later that month in the Dominican Republic. Plaintiff, never having received a legal interest in Hilding’s home, brought this action.
Obviously, the whole story leading to Hilding’s failure to convey a half interest in his home to plaintiff has never been told and is therefore not reflected in the record. A number of times Hilding tried, without success, to introduce evidence of plaintiff’s conduct. For example, Hilding was precluded from showing that plaintiff arranged to purchase a house with her former husband, McGrath. In fact, in the contract of sale, dated February 3, 1972, while married to and still living with Hilding, plaintiff was described as the wife of McGrath. So, too, when defendant’s lawyer tried to discover what the Hilding-McGrath couple had discussed before plaintiff went alone to Florida, or whether plaintiff went back to live with Mc-Grath after she left Hilding and before the Dominican divorce, the trial court stopped the inquiry as bearing only on a collateral matter. It is unfortunate but evident that the trial court was of the view that beyond the paltry facts surrounding the agreed-upon extension, the marital relationship of the parties was not relevant to whether plaintiff was entitled to equitable relief.
The applicable law is clear. The Statute of Frauds will ordinarily prevent enforcement of an oral agreement to convey an interest in land (General Obligations Law, § 5-703). A constructive trust will be impressed, however, when an unfulfilled promise to convey an interest in land induces another, in the context of a confidential or fiduciary relationship, to *629 make a transfer resulting in unjust enrichment (Foreman v Foreman, 251 NY 237, 240 [Cardozo, Ch. J.]). As restated plainly by this court just recently, there must be "(1) a confidential or fiduciary relation, (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment” (Sharp v Kosmalski, 40 NY2d 119, 121; accord Vassel v Vassel, 40 AD2d 713, affd 33 NY2d 533; Sinclair v Purdy, 235 NY 245, 252-253).
The principles are not disputed by the parties. In fact, the trial court purportedly applied them. The problem lies instead in the apparent misunderstanding of the term "unjust enrichment”.
A variety of circumstances may be posited in which, through an unfulfilled promise and abuse of a confidential relationship, one party induces another to make a transfer resulting in the first party’s enrichment. But the law is adamant. Enrichment alone will not suffice to invoke the remedial powers of a court of equity. Critical is that under the circumstances and as between the two parties to the transaction the enrichment be unjust. (Restatement, Restitution, § 1, Comments a, c; see, generally, 5 Scott, Trusts [3d ed], § 462.2.) Hence, whether there is unjust enrichment may not be determined from a limited inquiry confined to an isolated transaction. It must be a realistic determination based on a broad view of the human setting involved (cf. Sinclair v Purdy, 235 NY 245, 254, supra; Janke v Janke, 47 AD2d 445, 448, affd 39 NY2d 786).
On the above analysis, the infirmity in a contrary approach is the narrow view taken of the events culminating in Hilding’s failure to convey an undivided half interest in his home. With self-imposed restrictions, the trial court repeatedly excluded from consideration evidence bearing upon plaintiff’s conduct in a relationship based supposedly on mutual trust and fidelity. And yet, without regard to plaintiff’s conduct it cannot be determined whether Hilding’s enrichment, if that it be, was in fact unjust.
There is an analogue in other branches of the law, especially in the field of contracts. A promisee may not recover for a broken promise unless he has performed his obligations, usually categorized as a condition precedent (see 5 Williston, Contracts [3d ed], § 676). Certainly, the promisee seeking to establish a constructive trust must show that he has not been guilty of an equivalent breach of the trust and fidelity upon *630 which the constructive trust is to be based (see 20 NY Jur, Equity, §§ 106-107).
Giving Hilding the benefit, as one must, of the inferences to be drawn from the excluded evidence, plaintiff herself may have breached the relationship, supposedly based on mutual trust and fidelity, upon which she relies. Illustrative is the offer of proof that plaintiff, while married to and, more important, still living with defendant, signed a contract to purchase a house with her former husband and was described in that contract as the wife of McGrath.
Involved here is more than a technical question of evidence. In excluding proof of plaintiff’s possibly grievous fault in the reciprocal relation between husband and wife, the trial court lapsed. In the hectic abbreviated period of this so-called marriage, punctuated perhaps with grievous breaches of the relationship by the wife, none would, let alone a court of equity, expect the hapless husband to deed half his home to the wife.
In the discussion, thus far, it has been assumed that Hilding was indeed enriched. Actually, the home he had, so far as is known from this record, may have been ample for his purposes, if the McGrath family were not added. A larger house is not necessarily better than a small house. A man who needs and wants a compact car is not enriched by a limousine, especially if its saleability may be more difficult. Actually, Hilding has since sold the enlarged house, but there is no evidence, except for plaintiff’s inexpert opinion, that it was worth more than before it had been altered, or that any increase in economic value was reflected in the sale price. Nor was there evidence that the physical addition increased the esthetic value or livability of the house. To the contrary, the addition may have increased the burdens of maintaining and furnishing it. There is evidence that Hilding was put to additional expense for carpeting, for which he had to borrow the money, as he had had to borrow money to provide his share of the extension.
On the other hand, one should not conclude that one who parts with valuable assets, like the wife, is necessarily debarred from equitable relief just because she may have been guilty of misconduct, even grievous misconduct. There may be cases where the "enrichment” may be so disproportionately great in favor of the offended spouse that it would be equally disproportionate to permit the offended spouse to retain the assets or benefits received, as for example, the bulk of the *631 assets previously owned by the offender transferred for some reason to the spouse offended.
The point is that no intelligent determination can be made unless all of the relevant facts are explored, including the excuses and justifications rooted in the reciprocal relation of trust and fidelity. Then, upon such exploration, a nice balancing is required. None of that happened or was permitted to happen in this case. Instead a simplistic analysis based on the . superficial application of equitable principles was employed. And, of course, the issue is not, as some might mistakenly assume, whose fault caused the marriage to terminate, but whose fault it was that the oral promise was not performed.
If Hilding is to be believed and his proffers of proof credited to the full, Hilding was not only bedeviled by an ill-fated marriage, but perhaps by the venal co-operation of wife and former husband, presumably remarried. Before he may be held in judgment a new trial should be had exploring the issues.
Accordingly, the order of the Appellate Division should be reversed and a new trial granted, with costs to abide the event.