Gabrielli, J.
(dissenting). A constructive trust may be *886 imposed “[w]hen property has been acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest” (Beatty v Guggenheim Exploration Co., 225 NY 380, 386; see 1 Scott, Trusts [3d ed], § 44.2, p 337; 4 Pomeroy’s Equity Jurisprudence [5th ed], § 1053, p 119). The equitable doctrine is invoked in most cases to remedy the breach of a duty arising from a confidential or fiduciary relationship (see Bogert, Trusts & Trustees [2d ed], § 482, p 280). In some instances, the breach may consist of the failure of one in whom trust has been reposed to honor the terms of an express or implied promise to act in another’s interest (see, e.g., Sharp v Kosmalski, 40 NY2d 119, 121; Sinclair v Purdy, 235 NY 245). In other cases, a constructive trust has been imposed to prevent a coventurer from enjoying the benefits of a joint opportunity which he has. wrongfully appropriated to himself in derogation of the rightful expectations of the other coventurers (see, e.g., Meinhard v Salmon, 249 NY 458). Since, in my view, both of these conditions were present in the instant situation, I would uphold the imposition of a constructive trust upon the property which defendant Edgar S. K. Merrell, II, improperly acquired for himself.
There can be no serious dispute concerning the existence of a confidential relationship among the various parties. Defendant Edgar S. K. Merrell, II, who is an attorney, had handled several legal transactions for his cousins, Edgar M. and John Miller, including the administration of the estate of which the property known as Crystal Lake was a part. He had also managed the payment of the annual property taxes.on Crystal Lake and had negotiated favorable tax treatment for the parcel with the Department of Environmental Control. Such past dealings in relation to the Crystal Lake property, coupled with the close familial ties that existed between defendant Edgar S. K. Merrell, II, and his cousins, certainly were sufficient to give rise to a relationship of trust among the parties, notwithstanding that defendant had not been formally retained by plaintiffs to represent them in the purchase of the Peake parcel, which adjoined Crystal Lake.
Although they do not dispute that a confidential relationship existed, a majority of the members of this court find *887 no basis for the imposition of a constructive trust in this case. Relying primarily upon the factual findings of the trial court, the majority has concluded that defendant Edgar S. K. Merrell, II, did not, either expressly or impliedly, promise to purchase the Peake property on behalf of the four individuals who had a beneficial interest in the adjacent Crystal Lake parcel and that, consequently, the constructive trust remedy is not warranted. It is on this point that I find I must part company with my colleagues, since, in my view, the weight of the evidence clearly supports the factual conclusion of the Appellate Division that defendant’s conduct constituted an implied promise to act in plaintiffs’ behalf.
The Crystal Lake property was owned by plaintiffs Edgar M. and John Miller and by defendant’s father, Nathaniel E. Merrell. Defendant and his brother, Nathaniel B. Merrell, however, had built “camps” on the property and regularly used it for recreational purposes. Plaintiff John Miller testified at trial that some time during the month of June, 1972, defendant Edgar S. K. Merrell approached him to advise him that the 83-acre woodlot adjoining the Crystal Lake parcel was for sale and to inquire whether Miller was interested. According to Miller, he at first expressed an interest in purchasing the property for himself, but later changed his mind and agreed with defendant when defendant stated the property should be purchased by the four cousins who used Crystal Lake in order to protect their right to favorable tax treatment. As a result of this conversation, according to Miller, he was left with the impression that defendant would negotiate a purchase of the woodlot from the Peakes, who were defendant’s clients, and would arrange for title to be placed jointly in the names of the four cousins.
Miller further testified that some time during July, he visited defendant’s law office to discuss the purchase of the Peake woodlot. During this meeting, according to Miller, defendant’s father, who practiced law in the same building, took out an atlas, in defendant’s presence and showed Miller the precise boundaries of the Peake parcel. Finally Miller stated that he, defendant and defendant’s father had a “general conversation” about the anticipated joint purchase.
*888 The next conversation plaintiff John Miller had with defendant Edgar S. K. Merrell concerning the Peake property occurred in early August of 1972. According to plaintiff, Merrell informed him that the Peakes wanted only $650 for the property and that he (Merrell) would “take care of it” if Miller sent him a check for one quarter of the purchase price. Apart from a brief conversation concerning whether the property should be purchased in the names of the four cousins individually or in the name of the estate of which Crystal Lake was originally a part, plaintiff Miller heard nothing further from his cousin until early September, when he was called to defendant Merrell’s office and informed that Merrell had purchased the property for himself.
Interestingly, although defendant Merrell’s version of the events leading to his individual purchase of the Peake property differed somewhat from the version recounted by plaintiff John Miller, Merrell’s testimony is not inconsistent at all with the notion that Merrell had impliedly promised to act on plaintiffs’ behalf. Merrell acknowledged that he had called on Miller to ask him whether he was interested in the Peake property and that Miller had responded affirmatively. Significantly, Merrell stated that he offered the property to his cousin, John Miller, because he “felt the decent thing to do would be to * * * include him”. Defendant Merrell also acknowledged that he was aware that Miller had been shown the boundaries of the Peake property while he was in defendant’s law office, although he denied having participated in any “general conversation” concerning the planned purchase of the woodlot. Finally, Merrell admitted that he had told his cousin of the asking price for the Peake property in August of 1972, but stated that he had no recollection of having asked Miller to send him a check for his share of the price.
Defendant’s testimony on the question whether joint ownership of the property was ever explicitly discussed was somewhat equivocal, since he was unable to recall the specifics of many of the critical exchanges which took place between himself and his cousin. Merrell was able to state with certainty that he never suggested that the property be purchased in the name of the estate associated with Crystal *889 Lake, but he noted that his certainty arose only from the fact that, as an attorney, he knew that the estate had no legal capacity to acquire title. Merrell was not able to state unequivocally that ownership of the property by the four cousins who used Crystal Lake was never discussed; instead, he merely testified that he had no recollection of such discussion.
Even if defendant’s somewhat ambiguous testimony is credited, there is ample basis for concluding, as the Appellate Division did, that an implied promise had been made. Plaintiff John Miller had grown accustomed to relying upon his cousin, Edgar S. K. Merrell, II, to handle the legal details associated with the Crystal Lake property. When Merrell approached Miller and asked him if he were interested in acquiring the adjacent Peake woodlot, it was only natural for Miller to assume that his cousin would continue to represent his interests if he responded affirmatively. And, this assumption would seem to have been wholly warranted in light of defendant Merrell’s admission at trial that he only decided to ignore his cousin’s interests and purchase the Peake parcel for himself in August of 1972, when he became angered at his cousin’s behavior. Indeed, the only reasonable inference that could be drawn from defendant Merrell’s conduct in keeping plaintiff informed of the status of the Peake property was that he intended to negotiate the purchase of the property on behalf of plaintiff and the other parties who shared an interest in Crystal Lake.
As a result of his professional and familial ties to the Miller brothers, defendant Merrell had an affirmative obligation not to mislead them concerning his intentions to represent their interests in connection with the purchase of the Peake parcel. At the very least, he had a duty to inform plaintiff John Miller when he decided to purchase the property for himself. His failure to do so in the face of his certain knowledge that Miller wanted the property and assumed that defendant would make the necessary arrangements is a circumstance from which we may infer the existence of an implied promise (see Sharp v Kosmalski, 40 NY2d 119, supra) “Though a promise in words was lacking, the whole transaction * * * was ‘instinct with an obligation’ imper *890 fectly expressed” (Sinclair v Purdy, 235 NY 245, 254, supra, quoting Wood v Duff-Gordon, 222 NY 88, 91).
Moreover, the parties’ joint interest in the Crystal Lake property may be regarded as an alternative basis for imposing a constructive trust in this case. There can be little doubt that the availability of the Peake property constituted an appealing “opportunity” to the individuals who possessed an interest in the adjacent Crystal Lake parcel. Under settled principles of equity jurisprudence, such an opportunity could not be appropriated by one of the “co-venturers” in Crystal Lake unless he first offered the other interested parties a chance to participate (Meinhard v Salmon, 249 NY 458, supra).
The majority apparently recognizes the applicability of these equitable principles to the facts in this case, but nonetheless declines to invoke them as a basis for imposing a constructive trust because defendant Merrell possessed no actual legal interest in the Crystal Lake property at the time he purchased the Peake parcel. The majority’s reliance on the technicalities of title, however, is misplaced in this context, for the absence of record ownership in defendant cannot negate the fact that, in reality, he was a “co-venturer” in the beneficial use of Crystal Lake.
It is undisputed that defendant and his brother Nathaniel had set up “camps” on the Crystal Lake parcel for their own personal use. Similar use of the property was made by plaintiffs John and Edgar M. Miller. Moreover, although legal title to the Merrells’ share of the property remained in defendant’s father, defendant acknowledged that he fully expected to inherit it upon his father’s death. Finally, defendant Merrell’s continuous use and management of the property stand as clear indications of his proprietary interest in the parcel.
Equity demands that we “look through mere form to the substance of things” (Zeiser v Cohn, 207 NY 407, 419). Here, although formal title resided elsewhere, there can be no doubt that the four cousins, the Merrell brothers and the Miller brothers, were, in the substance, coventurers with respect to Crystal Lake. Their shared interest in the property, in turn, gave rise to an obligation in each to refrain *891 from acting in secret and appropriating an opportunity which properly belonged to all four. Since defendant Merrell cynically breached this obligation by acquiring the Péake parcel for himself, equity requires no less than that a constructive trust be imposed upon his acquisition for the benefit of those whose rights were disregarded.
For all of these reasons, I most respectfully dissent and cast my vote to affirm the order of the Appellate Division.
Judges Jasen, Wachtler, Fuchsberg and Meyer concur in memorandum; Judge Gabrielli dissents and votes to affirm in an opinion in which Chief Judge Cooke concurs; Judge Jones taking no part.
Order reversed, etc.