SHELBY GOODMAN, Respondent, v BARNEY GOODMAN, Appellant.

First Department, January 21, 1982

**APPEARANCES OF COUNSEL**

*Lewis M. Holland* of counsel (*Delson & Gordon* and *Chasan, Leyner, Holland & Tarrant, P.A.*), for appellant.

*Evan L. Gordon* of counsel (*Wofsey, Certilman, Haft, Lebow & Balin*), for respondent.

**OPINION OF THE COURT**

BLOOM, J.

Plaintiff (Shelby) is a citizen of the United States. Defendant (Barney) is a British subject, having been born in Leicester, England. The two intermarried in 1963 in the City of London. Until September, 1975 they resided in England. At that time they removed to this State. To complete the domestic picture the parties adopted a child in 1969. Although they were then legally residents of England the adoption took place in the United States.

At the time of the marriage Barney was a man of considerable wealth. Although Shelby could not match the financial standing of her husband, she was not wholly

destitute. Over the years she had accumulated assets the value of which totaled somewhere between three quarters of a million and one million dollars. These had come from her parents by way of gift and inheritance.

Commencing shortly after the marriage and continuing thereafter Barney transferred the major portion of his assets to Shelby. The bulk of these transfers took place in 1971 and 1972. The transfers were in furtherance of an estate plan to avoid, in whole or in part, the very large estate duty which, under the laws of the United Kingdom, would be payable upon his death.

After the parties came to this country an account was opened in their joint names. In addition, Shelby maintained an account in her own name. While Shelby was authorized to and did draw on the joint account, for the most part Barney treated the account as his own, utilizing it for his business and investment purposes.

In 1977 Shelby announced that the marriage was at an end. In January, 1978 this action for divorce was instituted, bottomed on allegations of cruel and inhuman treatment. Barney answered and interposed four counterclaims. The first was for a divorce based on plaintiff's adultery. The second counterclaim was also for a divorce and was predicated upon plaintiff's cruel and inhuman treatment of defendant. The fourth counterclaim sought custody of the child, or, in the alternative, reasonable visitation rights. The third counterclaim, which was ordered to be tried separately, and which presents the only issue which is now before us, sought imposition of a constructive trust upon the assets transferred by Barney to Shelby during the course of their marriage.

After an extended trial the court held that the transfers by Barney to Shelby during the course of the marriage were intended as absolute gifts. Accordingly, it held that no constructive trust could be imposed and dismissed the third counterclaim. We disagree and modify to reinstate the third counterclaim and to impose a constructive trust on one half of the property transferred by Barney to Shelby during the life of the marriage. "Little profit will come from a dissection of the precedents. None precisely similar

is cited in the briefs of counsel. What is similar in many, or so it seems to us, is the animating principle". (*Meinhard v Salmon,* 249 NY 458, 466.)

In looking to the principle which animates the doctrine of constructive trust we are required to bear in mind that: "[a] constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee" (*Beatty v Guggenheim Exploration Co.,* 225 NY 380, 386; see, also, *Sharp v Kosmalski,* 40 NY2d 119, 121). In developing the doctrine, equity has laid down four requirements for its invocation. First, there must be a confidential or fiduciary relationship; secondly, there must be a promise, either express or implied; thirdly, there must be a transfer of property in reliance thereon; and finally, there must be unjust enrichment to the transferee (*Sharp v Kosmalski,* 40 NY2d 119, *supra; Foreman v Foreman,* 251 NY 237; *Janke v Janke,* 47 AD2d 445, affd 39 NY2d 786). However, the applicability of the doctrine is not rigidly limited. Its scope is sufficiently expansive to satisfy the needs of justice and to enable chancery to mold its elastic remedies to meet the needs of the individual case (*Foreman v Foreman,* 251 NY 237, *supra; Simonds v Simonds,* 45 NY2d 233).

No wrongdoing is necessary to invoke the doctrine. "Innocent parties may frequently be unjustly enriched. What is required, generally, is that a party hold property 'under such circumstances that in equity and good conscience he ought not to retain it' (*Miller v Schloss,* 218 NY 400, 407; see *Sharp v Kosmalski,* 40 NY2d 119, 123, *supra; Sinclair v Purdy,* 235 NY 245, 253-254)". (*Simonds v Simonds,* 45 NY 233, 242.)

Whatever the standard here applied, it is clear that the circumstances warrant the imposition of a constructive trust. To begin with the very nature of the relationship between Shelby and Barney was confidential. They were husband and wife and, until the breakdown of their marriage, they shared the most intimate confidences. Beyond that was the promise. Articulated or not, it was manifest in Shelby's testimony. In response to the question:

"Q. Didn't you expect, Mrs. Goodman, in 1975, when you came to this country and you bought 550 Park Avenue, you already owned, or had in your name the villa in Castellaras, you had a bank account, your securities account with Alliance Capital, didn't you expect that your husband would have a benefit from all of these assets and property, particularly directed to those * * *

"Q. Didn't you intend that when you came here?

"THE COURT: All right, I will allow her to answer.

"A. For him to share them with me for so long as we were together married. If they were mine, it was my home * * *

"Q. Did you ever have any discussion with Mr. Goodman at or near any time he transferred any property to you —

"A. Conversations about what?

"Q. I didn't finish the question. — that in the event of a separation or divorce that he would no longer be permitted to share in the use or enjoyments of any of those properties that he had transferred to you * * *

"A. I don't recall any conversation of that nature".

This interchange makes it apparent that Shelby knew and understood that the transfers made to her by Barney were in futherance of an estate plan and that during the lifetime of the parties the property was to be held for their common use.

Additionally, it is plain that the transfers from Barney to Shelby were in reliance on the confidential relationship and the promise implicitly flowing therefrom. While Shelby's testimony at the trial seeks to imply some reservation as to the terms upon which the transfers were accepted, concededly these reservations were never communicated to Barney. The reason therefor is obvious. Had they been communicated, the flow of transfers would have stopped.

Finally there remains the question of unjust enrichment. What is here involved is the transfer of substantially the entire product of the life's work of a man. By seeking to exclude Barney from sharing in any portion of the assets transferred to her during the life of the marriage she was unjustly enriched.

Mention of a further point not raised by Shelby is appropriate. Some of the property taken or held in her name is real property. It may be argued that the Statute of Frauds (General Obligations Law, § 5-703), which requires, in substance, that no interest in real property other than a lease for a period not exceeding one year may be created except in writing or by operation of law, bars the imposition of a constructive trust in this realty. However, as the Court of Appeals noted in *Foreman v Foreman* (251 NY 237, 240, *supra*): "The rule is now settled by repeated judgments of this court that the statute does not obstruct the recognition of a constructive trust affecting an interest in land where a confidential relation would be abused if there were repudiation, without redress, of a trust orally declared * * * Criticism of the rule as involving a partial repeal of the prohibition of the statute is heard from time to time in commentary and treatise. Whatever force the criticism may have had while the rule was in the making, has vanished with the years. By long acquiescence, the exception, if such it be, has wrought itself by construction into the body of the statute as if written there from the beginning. 'It is not the promise only, nor the breach only, but unjust enrichment under cover of the relation of confidence, which puts the court in motion' (*Sinclair* v. *Purdy, supra*)". In holding as we do, however, we do not mean to exclude Shelby from the right to share in any portion of the property. Accordingly, we hold that property transferred to her was marital property and that the parties were tenants in common of that property. To the extent that she possesses more than one half of the property transferred to her by Barney during the marriage of the two, she is a constructive trustee for Barney.

Accordingly, the order of the Supreme Court, New York County (BOWMAN, J.), entered June 5, 1980, should be modified, without costs, to reverse, on the law and on the facts, the dismissal of defendant's third counterclaim and to reinstate that counterclaim and declare that plaintiff is a constructive trustee for the benefit of defendant to the extent of one half of the property transferred by defendant to plaintiff during the life of their marriage and to remand

the matter for the purpose of determining the amount due to defendant under the constructive trust.

SANDLER, J. P., SULLIVAN, CARRO and MARKEWICH, JJ., concur.

Order, Supreme Court, New York County, entered on June 5, 1980, unanimously modified, without costs and without disbursements, to reverse, on the law and on the facts, the dismissal of defendant's third counterclaim and to reinstate that counterclaim and declare that plaintiff is a constructive trustee for the benefit of defendant to the extent of one half of the property transferred by defendant to plaintiff during the life of their marriage and to remand the matter for the purpose of determining the amount due to defendant under the constructive trust.